UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RANJITHA SUBRAMANYA, individually and on behalf of a class of those similarly situated, | Case No. _____ |
| Plaintiff, | Judge _____ |
| vs. | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., | PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION |
| Defendants. | |

Plaintiff filed this lawsuit to obtain emergency relief on behalf of herself and a class of similarly-situated aliens who are legally authorized to work in the United States but are suffering serious and irreparable harm because Defendants refuse to comply with the law and issue the physical cards that Plaintiff and class members need to prove that they are authorized to work. Plaintiff now moves this Court, pursuant to Federal Rule of Civil Procedure 65(b), to issue a mandatory temporary restraining order that compels Defendants to issue Employment Authorization Documents ("EADs") immediately, and in no event later than seven calendar days after the date of the Court's order, to Plaintiff and members of the following proposed class: "All aliens who reside in the United States and have submitted an Application for Employment Authorization that has been approved by USCIS, but who have not received an EAD."

The extraordinary relief of a mandatory temporary restraining order is necessary because Plaintiffs and class members will otherwise suffer the serious and irreparable harm of being unable to be hired or to continue working at an existing job, and may permanently lose their current employment. For example, USCIS approved Plaintiff's Application for

Employment Authorization on April 7, 2020 but, to date, Defendants have not provided her with the required EAD. As a result, Plaintiff was forced to stop working on June 7, 2020, when her prior EAD expired. Worse, Plaintiff's employer has warned her that she will permanently lose her job if she does not provide a valid and unexpired evidence of employment authorization by August 9, 2020.

The Court should grant this motion because the verified complaint and accompanying evidentiary materials establish that: (1) Defendants are required to issue an EAD after approving an alien's Application for Employment Authorization; (2) Defendants historically have issued EADs within 48 hours after such approvals; (3) Defendants have significantly slowed or stopped issuing EADs, apparently because they decided to terminate USCIS's contract with a third-party printing company without having any alternative in place; (4) Plaintiff and class members have satisfied the requirements of the Administrative Procedure Act, 5 U.S.C. § 706(1), which authorizes this Court to compel agency action that has been unlawfully withheld or unreasonably delayed; and (5) Plaintiff and class members will be irreparably harmed unless the Court issues the requested mandatory temporary restraining order.

Plaintiff further requests that the Court grant her motion for class certification, which will be filed shortly after the filing of this motion, so that the Court can order immediate relief on a class-wide basis.

Accordingly, for the reasons stated in the accompanying memorandum in support, and based upon the evidence set forth in the verified complaint, the declarations filed concurrently with this motion, and the exhibits thereto, and for good cause shown, this Court should issue the requested mandatory temporary restraining order attached as Exhibit A. Counsel's declaration

describing the efforts made to provide notice to Defendants' counsel of this lawsuit and motion for temporary restraining order is attached as Exhibit B.

    Respectfully submitted,

    s/ Robert H. Cohen
    Robert H. Cohen, Trial Attorney (0009216)
    Caroline H. Gentry (0066138)
    David P. Shouvlin (0066154)
    Porter Wright Morris & Arthur LLP
    41 South High Street, Suites 2800-3200
    Columbus, Ohio 43215
    Telephone: 614.227.2066
    Email: rcohen@porterwright.com
    Email: cgentry@porterwright.com
    Email: dshouvlin@porterwright.com

    *Counsel for Plaintiff*

## MEMORANDUM IN SUPPORT OF MOTION
## FOR TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNTION

On behalf of herself and members of the proposed class, Plaintiff asks this Court to issue a mandatory temporary restraining order and mandatory injunction that compels Defendants to comply immediately, and in no event later than seven days from the date of the Court's order, with their clear and non-discretionary duty of issuing Employment Authorization Documents (EADs) to aliens whose Applications for Employment Authorization have been approved. Absent the requested relief, Plaintiff and class members will be seriously and irreparably harmed by the loss of prospective and current employment. Because of the serious and irreparable nature of this harm and because Plaintiff and class members are entitled to mandatory injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), this Court can and should grant this motion and issue the requested mandatory temporary restraining order.

### I. STATEMENT OF FACTS.

#### A. The Applicable Regulatory Framework Requires Plaintiff And Class Members To Provide USCIS-Issued Employment Authorization Documents To Employers Before They Can Lawfully Be Permitted To Work.

By law, every person or entity that hires an individual for employment must ensure that the individual provides documentation sufficient to verify their identity and their authorization to work lawfully in the United States. *E.g.*, 8 U.S.C. § 1324a(a)(1)(B)(i); 8 C.F.R. § 274a.2. Non-compliant employers face potential civil and criminal penalties. 8 U.S.C. § 1324a(e) and (f); 8 C.F.R. § 274a.10.

To obtain the documentation necessary to work lawfully in the United States, non-citizen aliens such as Plaintiff and class members must submit an Application for Employment Authorization to USCIS. 8 C.F.R. §§ 274a.12(c) & 274a.13(a). The decision to approve these applications is within USCIS's discretion. 8 C.F.R. § 274a.13(a)(1). Once USCIS has approved

such an application, however, USCIS has a mandatory, ministerial, discrete and non-discretionary duty to issue an EAD to the applicant: "If the application is granted, the alien ***shall be*** notified of the decision and ***issued an employment authorization document*** valid for a specific period and subject to any terms and conditions as noted." 8 C.F.R. § 274a.13(b) (emphasis added). On its website, USCIS provides the following exemplar of an EAD, which is a physical card that is approximately the size of a driver's license:[1]

 

**B. Although USCIS Approved Plaintiff's Application For Employment Authorization On April 7, 2020, Defendants Still Have Not Issued The Required EAD To Her, Apparently Because Defendants Decided To Terminate USCIS's Contract With A Third-Party Printing Company.**

Plaintiff Ranjitha Subramanya is a native and citizen of India. (Verified Complaint ("Compl."), ¶ 15.) She was last admitted to the United States as an H-1B nonimmigrant to work at Nationwide Insurance. (*Id.*) She applied for and was granted a change of nonimmigrant status to H-4 as a nonimmigrant dependent of her husband, who is in valid H-1B status and is employed by American Electric Power. (*Id.*)

Plaintiff timely applied for an extension of her H-4 nonimmigrant status and an extension of her employment authorization on December 23, 2019. (Compl., ¶ 23.) She was notified of and attended an appointment on January 17, 2020, that permitted USCIS to capture her biometric

---

[1] These images were downloaded from the following URL on July 21, 2020: https://www.uscis.gov/i-9-central/form-i-9-acceptable-documents

2

identifiers. (*Id.*, ¶ 24.) On April 7, 2020, USCIS approved her applications and extended her H-4 status and work authorization until June 7, 2023. (*Id.*, ¶ 25.) However, Defendants did not issue, and still have not issued, the EAD, which is the only document that is legally sufficient to provide evidence of Plaintiff's employment authorization to an employer. (*Id.*)

Historically, USCIS has produced and mailed EADs to successful applicants within 48 hours of the approval. Plaintiff has been waiting for more than 105 days since USCIS approved her application, however, and she still had not received her EAD. (Compl., ¶ 26.)

Plaintiff and her counsel have made numerous attempts to implore USCIS to issue the EAD, all without success. (*Id.*, ¶¶ 27-38.) Senator Rob Portman, acting on behalf of Plaintiff, also tried but failed to persuade USCIS to issue the EAD. (*Id.*, ¶¶ 33, 36.) On June 2, Senator Portman advised Plaintiff that USCIS informed him of "significant delays at this time in card production" and that "USCIS is unable to expedite the production of EAD cards." (*Id.*, ¶ 33; see also Declaration of Catherine Kang ("Kang Decl."), Exhibit E.) Several weeks later, on July 21, 2020, Senator Portman again advised Plaintiff that "[u]nfortunately, according to [USCIS] officials, they are far behind in card production…. USCIS says that they are unable to expedite the printing of your card." (*Id.*, ¶ 36; Kang Decl., Exhibit E.)

Plaintiff was able to continue working at Nationwide Insurance until her prior EAD expired on June 7, 2020. (Compl., ¶ 7.) She had to stop working after that date because she lacked a valid and unexpired EAD, even though USCIS has approved her Application for Employment Authorization. (*Id.*, ¶¶ 4, 7.) Alarmingly, Plaintiff's employer has notified her that she will lose her job if she does not provide valid, unexpired evidence of her employment authorization by August 9, 2020. (*Id.*, ¶ 7)

3

Defendants' failure or refusal to provide an EAD to Plaintiff is not an isolated example. Defendants have significantly slowed and/or stopped issuing EADs, resulting in an estimated backlog of 75,000 EADs. (Compl., ¶¶ 6, 42.) One injured class member is Andrea La Manna, an Italian chess FIDE master who resides in New York. (Declaration of Andrea La Manna ("La Manna Decl."), ¶¶ 1-2, 4.) Although USCIS approved Mr. La Manna's Application for Employment Authorization on May 19, 2020, it did not issue an EAD to him. (*Id.*, ¶ 5.) As a result, Mr. La Manna has been unable to accept a position with New York City Chess, Inc. d/b/a Chess NYC, has lost two months of wages, and is in a strained financial position. (*Id.*, ¶ 6.)

Plaintiff, Mr. La Manna, other class members and their counsel have been perplexed by USCIS's sudden intransigence and refusal to provide EADs they are legally required to provide. On July 9, 2020, some light was shed on the matter in a Washington Post opinion column titled "How the Trump administration is turning legal immigrants into undocumented ones." The author of that column, Catherine Rampell, reports that the problem arose from USCIS's decision to terminate its contract with a printing company without having a backup plan in place:

> Without telling Congress, the administration has scaled back the printing of documents it has already promised to immigrants …. In mid-June, U.S. Citizenship and Immigration Services' contract ended with the company that had been printing these documents. Production was slated to be insourced, but 'the agency's financial situation,' USCIS said Thursday, prompted a hiring freeze that required it to ratchet down printing.
>
> Of the two facilities where these credentials were printed, one, in Corbin, Ky., shut down production three weeks ago. The other facility, in Lee's Summit, Mo., appears to be operating at reduced capacity.
>
> Some 50,000 green cards and **75,000 other employment authorization documents** promised to immigrants haven't been printed, USCIS said in a statement. The agency said it had planned to escalate printing but that it "cannot speculate on future projections of processing times." In the event of furloughs – which the agency has threatened if it does not get a $1.2 billion loan from Congress – "all agency operations will be affected."

July 9, 2020 Washington Post Article (emphasis added), copy attached as Exhibit C and available at https://www.washingtonpost.com/opinions/how-the-trump-administration-is-turning-legal-immigrants-into-undocumented-ones/2020/07/09/15c1cbf6-c203-11ea-9fdd-b7ac6b051dc8_story.html.

Ms. Rampell's reporting has been confirmed by the Office of the Citizenship and Immigration Services Ombudsman, which recently issued the following statement:

> In June 2020, U.S. Citizenship and Immigration Services (USCIS) reduced its capacity to print secure documents, such as Lawful Permanent Resident (LPR) Cards and Employment Authorization Documents, after it ended a contract with an outside company responsible for printing these cards.  According to USCIS, it intended to hire federal employees to replace the contractors; however, its financial situation resulted in a hiring freeze that has impacted the printing of these secure cards.
>
> Stakeholders are submitting requests for case assistance to the Office of the Citizenship and Immigration Services Ombudsman (Ombudsman), confirming there are delays in receiving these secure documents.  USCIS expects these backlogs will continue for the foreseeable future.  Should there be a furlough of USCIS employees on August 3, 2020, card production backlogs will likely increase.

July 21, 2020 Ombusdman's Alert: Card Production Delays at USCIS, copy attached as Exhibit D and available at https://www.aila.org/infonet/cis-ombudsman-provides-update-on-card-production#:~:text=CIS%20Ombudsman%20Provides%20Update%20on%20Card%20Production%20Delays%20at%20USCIS,-AILA%20Doc.&text=Individuals%20experiencing%20a%20delay%20in,a%20local%20USCIS%20field%20office.

5

### C. Plaintiff And Members Of The Proposed Class Will Be Irreparably Harmed Without Immediate Relief.

Plaintiff and members of the proposed class have suffered and will continued to suffer irreparable harm if the Court does not issue the requested relief. As noted, both Plaintiff and Mr. La Manna have been unable to work because of the lack of an EAD, and Plaintiff will lose her existing job permanently if she cannot provide an valid proof of employment authorization to her employer by August 9, 2020. Plaintiff and class members cannot be made whole by monetary relief because the loss of employment opportunities is irreparable; moreover, it is difficult if not impossible for Plaintiff and class members to sue the United States for lost wages and other monetary damages. Without a Court order that compels Defendants to issue the lawfully-required EADs, Plaintiff and class members will continue to suffer serious and irreparable harm.

## II. THIS COURT CAN AND SHOULD REMEDY DEFENDANTS' UNLAWFUL AND INJURIOUS FAILURE TO ACT BY COMPELLING AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(1).

### A. Plaintiff Meets The Requirements Of 5 U.S.C. § 706(1), Which Provides An Effective Judicial Remedy To Plaintiff and Members of the Proposed Class.

Fortunately, an effective judicial remedy is provided by the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq. The APA not only authorizes, but indeed commands, this Court to compel Defendants to issue EADs to Plaintiff and class members. Specifically, this Court "*shall* compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (emphasis added). To accomplish this objective, the APA expressly empowers the Court to issue mandatory injunctive relief. 5 U.S.C. § 703. Because Plaintiff meets all six requirements for Section 706(1) claims, this Court should issue the mandatory temporary restraining order.

The first requirement for a Section 706(1) APA claim is that Defendants failed to take a discrete "agency action" as defined in the statute. *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 62-63, 124 S. Ct. 2373, 2379, 159 L.Ed.2d 137 (2004). One discrete

6

"agency action" is the grant of a "license," which is "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. §§ 551(8), 551(13) & 701(b)(2). Plaintiff meets this first requirement because the EAD is a "license" as that term is defined in the APA, and Defendants' failure to issue EADs is therefore an "agency action" within the meaning of the APA.

The second requirement for a Section 706(1) APA claim is that the agency action at issue is legally required. *SUWA*, 542 U.S. at 63, 124 S. Ct. at 2379 (emphasis omitted). Plaintiff meets this second requirement because the applicable regulation, 8 C.F.R. § 274a.13(b), requires Defendants to issue EADs after USCIS approves an Application for Employment Authorization.

The third requirement for a Section 706(1) APA claim is that the agency action at issue must not be committed by law to the discretion of the agency. 5 U.S.C. § 701(a)(2). Plaintiff meets this third requirement because Defendants have no discretion about whether or not to issue an EAD. Although USCIS has the discretion to approve or deny an Application for Employment Authorization, once it approves such an application, it has no choice about whether or not to issue an EAD. The applicable regulation provides: "If the application is granted, the alien ***shall be*** notified of the decision and ***issued an employment authorization document*** valid for a specific period and subject to any terms and conditions as noted." 8 C.F.R. § 274a.13(b) (emphasis added). The word "shall" leaves no room for doubt about the non-discretionary nature of this legal obligation. *E.g., Bennett v. Spear*, 520 U.S. 154, 175, 117 S. Ct. 1154, 1167, 137 L.Ed.2d 281 (1997) ("[A]ny contention that the relevant provision of 16 U.S.C. § 1536(a)(2) is discretionary would fly in the face of its text, which uses the imperative 'shall.'").

The fourth requirement for a Section 706(1) APA claim is that it involve "final agency action." 5 U.S.C. § 704. Agency action is "final" if it both "mark[s] the 'consummation' of the

7

agency's decision-making process" and is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-178, 117 S. Ct. at 1168-1169 (citations omitted). Here, USCIS's approvals of the Applications for Employment Authorization submitted by Plaintiff and class members constituted "final agency actions" because those approvals marked the end of USCIS's decision-making process and determined the rights of Plaintiff and class members, who are now legally entitled to EADs. Plaintiff has therefore satisfied this fourth requirement.

The fifth requirement for a Section 706(1) APA claim is that no other adequate remedy is available in court. 5 U.S.C. § 704. Aside from the APA and the Mandamus Act, 28 U.S.C. § 1361, Plaintiff and class members have no other adequate judicial remedy in this Court. As stated above, they are unable to assert claims for lost wages and other monetary damages against the United States. Further, they have no right to a judicial appeal of Defendants' refusal to issue the required EADs. Therefore, Plaintiff has met the fifth requirement.

The sixth and final requirement for a Section 706(1) APA claim is that no statute precludes judicial review. 5 U.S.C. § 701(a)(1). Here, there is no provision in the relevant immigration statutes, *e.g.*, 8 U.S.C. § 1324a, that precludes judicial review of Defendants' refusal or failure to issue EADs. Accordingly, Plaintiff has met the sixth and final requirement.

Having satisfied all six requirements of her Section 706(1) APA claim, Plaintiff requests, on behalf of herself and the proposed class, that the Court compel Defendants to issue every EAD that they have unlawfully withheld or unreasonably delayed on an immediate basis.

**B.     Defendants Cannot Defeat A Section 706(1) APA Claim By Invoking Equitable Defenses Or Financial Woes To Justify Breaking The Law.**

Defendants will likely continue to claim that their hands are tied by a lack of financial resources and they simply cannot print and issue the required EADs. But as was recently held by

8

the Fourth Circuit Court of Appeals, the United States cannot invoke equitable defenses or policy arguments to avoid the mandate in Section 706(1) that requires the Court to compel Defendants to take required agency action that it has unlawfully withheld. *South Carolina v. United States*, 907 F.3d 742 (4th Cir. 2018). Thus, Defendants' anticipated reliance on its financial woes or other equitable defenses will be unavailing as a matter of law.

In *South Carolina*, the State of South Carolina sued the United States of America, the Department of Energy, the National Nuclear Security Administration, and two federal officials (collectively "DOE") for failing to comply with its statutory obligation to remove plutonium from South Carolina. The district court issued an order under the APA that compelled DOE to remove the plutonium within two years. DOE appealed, arguing that the district court wrongly failed to exercise its equitable discretion and to consider, among other things, its claim that "compliance with the injunction is simply impossible." 907 F.3d at 753.

The Fourth Circuit framed the question on appeal as follows: "Does a district court possess discretion to grant or deny injunctive relief against unlawfully withheld agency action pursuant to § 706(1)?" 907 F.3d at 754. After a lengthy analysis, the appellate court answered the question in the negative. *Id.* at 755-759. Specifically, the Fourth Circuit agreed with the Ninth and Tenth Circuits—the only other appellate courts to have addressed the issue—that the plain text of Section 706(1) "mandates the award of injunctive relief when a plaintiff succeeds in challenging unlawfully withheld agency action. In other words, when a court determines that an agency has wrongfully withheld a legally-required action ... the court ***must*** award injunctive relief to secure the agency's compliance." *Id.* at 758 (emphasis added).

The Fourth Circuit also rejected DOE's claim that compliance with the injunction was impossible, for two reasons. First, the court noted that DOE did not produce any evidence

9

showing that compliance would be "truly impossible." 907 F.3d at 764. Second, the court noted that DOE could raise its impossibility argument at a later time, during contempt proceedings. *Id.* at 765. The court concluded: "Because DOE failed to convince the court that compliance with the injunction was actually impossible (rather than merely difficult, inconvenient, or potentially impossible), the court was entitled to order compliance." *Id.*

Accordingly, if Defendants continue to claim that USCIS is simply unable to issue Plaintiff and class members the EADs to which they are legally entitled, this Court ***must*** reject those excuses and instead "award injunctive relief to secure the agency's compliance." *South Carolina*, 907 F.3d at 765. *Accord Zhou v. FBI Director*, Case No. 07-cv-238, 2008 WL 2413896, at *7 (D.N.H. June 12, 2008) (finding it inappropriate to shift the burden of lack of agency resources onto plaintiff who did not create the problem); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 744 (E.D. Va. 2008) (finding that lack of agency resources was not relevant because "[b]ureaucratic inadequacy is not a justification, especially because the costs of noncompliance are imposed on the applicant"); *Alkeylani v. DHS*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007) ("While [lack of resources] may be a legitimate policy crisis, the Court will not excuse Defendants from their statutory duty and let the cost fall on immigrant plaintiffs").

### III. THE COURT SHOULD ISSUE A MANDATORY TEMPORARY RESTRAINING ORDER THAT REQUIRES DEFENDANTS TO IMMEDIATELY PRINT AND PROVIDE EADS TO PLAINTIFF AND CLASS MEMBERS.

Rule 65 governs the issuance of temporary restraining orders and preliminary injunctions. When ruling on a motion for temporary restraining order or preliminary injunction, a Court must balance four factors: (1) whether the movant has a strong or substantial likelihood of success on the merits, (2) whether the movant will suffer irreparable harm without the relief requested, (3) whether granting the relief requested will cause substantial harm to others, and (4) whether the

public interest will be served by granting the relief requested. *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999).

This Court should grant a temporary restraining order if "it clearly appears from specific facts shown by affidavit … that immediate and irreparable injury, loss, or damage will result" to the applicant. Fed. R. Civ. P. 65(b). The Sixth Circuit has held that "[i]n general, the likelihood of success that need be shown … will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (internal quotation and citation omitted).

All four factors weigh strongly in favor of granting the temporary restraining order.

### A. Plaintiff Has Shown A Strong Likelihood Of Success On The Merits Of Her Section 706(1) APA Claim.

Plaintiff has demonstrated a strong likelihood of success on the merits of her Section 706(1) APA claim (Count One). As shown above, she has met all six requirements of that claim, namely: (1) Defendants have failed to take the discrete "agency action" of issuing EADs, which are "licenses" within the meaning of the APA; (2) Defendants are legally required to issue EADs pursuant to 8 C.F.R. § 274a.13(b); (3) Defendants "shall" issue an EAD once an Application for Employment Authorization is approved, 8 C.F.R. § 274a.13(b), and therefore have no discretion in the matter; (4) Defendants' approval of the Applications for Employment Authorization submitted by Plaintiff and class members constitutes "final agency action" that marked the end of USCIS's decision-making process and conferred rights to EADs on Plaintiff and class members; (5) no other adequate remedy is available in this Court; and (6) no statute precludes this Court's judicial review under the APA. Defendants will be unable to contest these factual and legal conclusions. Accordingly, the first factor weighs strongly in favor of granting the requested mandatory temporary restraining order.

11

### B. Plaintiff and Members of the Proposed Class Will Suffer Immediate Irreparable Harm Without The Relief Requested.

Plaintiff has also provided "specific facts" from which it "clearly appears" that Plaintiff and class members will suffer immediate and irreparable injury if the requested restraining order is not granted. Plaintiff has been unable to work since June 7, 2020, because of the lack of an EAD, and she does not have any viable path to recovering her lost wages and other damages in a judicial proceeding against Defendants. If Plaintiff is unable to provide valid and unexpired proof of employment authorization to her employer by August 9, 2020, which is less than three weeks away, then she will permanently lose her job. Loss of employment constitutes serious and irreparable harm.

Thousands of unnamed class members will also suffer serious and irreparable harm if they are unable to get hired or keep their job despite USCIS's approval of their Applications for Employment Authorization, solely because USCIS has refused to provide EADs to them. For example, Mr. La Manna has already lost two months of wages and he will not be able to accept employment with Chess NYC until he has received his EAD. Class members have thousands of similar stories that differ in detail but are alike in kind – all of them either have experienced or will experience serious and irreparable harm because of Defendants' unlawful and inexcusable failure to issue EADs so that class members can obtain or keep their employment.

For these reasons, the second factor weighs strongly in favor of granting the requested mandatory temporary restraining order.

### C. Granting The Relief Requested Will Not Substantially Harm Others.

A mandatory temporary restraining order that compels Defendants to issue the legally-required EADs will not harm anyone, much less cause substantial harm. It is inconceivable that Defendants could reasonably argue that being required to follow and comply with the law would

cause them or anyone else to suffer harm. This third factor also weighs strongly in favor of granting the requested mandatory temporary restraining order.

### D. The Public Interest Will Be Served By Granting The Requested Relief.

The public interest will be well-served by granting the requested relief. It is always in the public's interest to ensure that the federal government complies with the law. Accordingly, this fourth factor also weighs strongly in favor of granting the requested mandatory temporary restraining order.

### E. Plaintiff Notified Defendants' Counsel Of This Motion.

Plaintiff's counsel made reasonable efforts to notify Defendants' counsel of this motion. A declaration describing those efforts is attached as Exhibit B.

### F. The Court Should Not Require Plaintiff To Post A Bond.

The Court has the discretion to issue the requested relief without requiring Plaintiff to post a bond. *Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F. 3d 1171, 1176 (6th Cir. 1995) ("While we recognize that the language of Rule 65(c) appears to be mandatory … the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security."). "It is well established in this Circuit that it is within the district court's discretion to require the posting of security or not." *Wood v. Detroit Diesel Corp.*, 213 Fed. Appx. 463, 472 (6th Cir. 2007) (affirming $1,500 bond over the defendant's objection).

When a plaintiff is engaged in public interest litigation, the district court has greater discretion to waive the requirement of a bond. *See Moltan Co.*, 55 F.3d at 1176; *Pharmaceutical Soc'y v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174-75 (2d Cir. 1995). It is also appropriate to waive the bond requirement if: (1) a plaintiff seeks to enforce federally protected rights, *see Crowley v. Local No. 82*, 679 F.2d 978, 1000–1001 (1st Cir. 1982) (no bond required because a bond would adversely affect enforcement of Title VII), *rev'd on other grounds*, 467

13

U.S. 526 (1984), (2) all four factors of the preliminary injunction standard weigh in favor of the plaintiff, *Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743, 757 (S.D. Ohio 2010), or (3) granting injunctive relief carries no risk of monetary loss to the party enjoined or restrained. *See Americans United for Separation of Church & State v. City of Grand Rapids*, 784 F. Supp. 403, 412 (W.D. Mich. 1990) (no possibility that material damages would follow from grant of injunction preventing erection of Menorah on public plaza).

All of these factors weigh in favor of the Court exercising its discretion to not require a bond in this case. This class action constitutes public interest litigation that seeks to vindicate important federal rights for aliens, who are members of a suspect class and are suffering serious and irreparable harm because of Defendants' failure to comply with the law. In addition, all four factors weigh strongly in favor of granting the requested relief. Finally, the requested injunctive relief will not materially damage Defendants. For all of these reasons, Plaintiff requests that the Court dispense with the bond requirement.

## IV.  CONCLUSION.

For the reasons stated, Plaintiff requests that the Court grant this Motion and issue the proposed order attached as Exhibit C.

Respectfully submitted,

s/ Robert H. Cohen
Robert H. Cohen, Trial Attorney (0009216)
Caroline H. Gentry (0066138)
David P. Shouvlin (0066154)
Porter Wright Morris & Arthur LLP
41 South High Street, Suites 2800-3200
Columbus, Ohio 43215
Telephone: 614.227.2066
Email: rcohen@porterwright.com
Email: cgentry@porterwright.com
Email: dshouvlin@porterwright.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on this 22nd day of July 2020 via email and U.S. first class mail, postage prepaid on the following counsel:

>USCIS
>Office of the Chief Counsel
>20 Massachusetts Avenue, NW
>Room 4210
>Washington, DC 20529
>uscis.serviceofprocess@uscis.dhs.gov

and

>Christopher R. Yates
>Dept. of Justice
>U.S. Attorney's Office
>303 Marconi Blvd., Suite 200
>Columbus, OH 43215
>Christopher.Yates@usdoj.gov

>s/ Robert H. Cohen
>Robert H. Cohen

13505507v1