IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RANJITHA SUBRAMANYA, et al., | : | |
| | : | |
| Plaintiffs, | : | CASE NO. 2:20-cv-03707 |
| | : | |
| v. | : | CHIEF JUDGE ALGENON L. MARBLEY |
| | : | |
| UNITED STATES CITIZENSHIP | : | MAGISTRATE JUDGE ELIZABETH P. DEAVERS |
| and IMMIGRATION SERVICES, et al., | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF AND WRIT OF MANDAMUS, AND OBJECTION TO CERTIFICATION AS A CLASS ACTION (ECF NOS. 1, 2, 5, AND 17)[1]**

---

Defendants, United States Citizenship and Immigration Services (USCIS), United States Department of Homeland Security (DHS), Ken Cuccinelli, and Ernest Destefano, in their official capacities, respectfully move this Court to dismiss Plaintiffs' amended complaint and petitions for lack of subject-matter jurisdiction, as moot, and for improper venue.   Plaintiffs allege Defendants "unlawfully withheld or unreasonably delayed" issuance of an employment authorization document (EAD) in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(1), (2), and Due Process Clause of the Fifth Amendment to the United States Constitution (Substantive Due Process), seeking relief via the invocation of petitions for Temporary Restraining Order, Preliminary

---

[1]At 2:05, this afternoon, Tuesday, July 28, knowing this Court's 10:30 a.m., Wednesday, July 29 status conference, with 3:00 p.m. hearing on Temporary Restraining Order, Plaintiffs have filed an "Amended Motion for Temporary Restraining Order and Mandatory Injunction," piling on new allegations, and referencing 14 newly identified class members.  In lieu of a separate "motion to strike" Defendants respectfully request that this Court dismiss this action in total, on the basis of the present Motion, or, in the least, dismiss or considerably delay the TRO hearing so that Defendants might for a moment know the claims against them, the parties who are prosecuting it, and the time to investigate, research and brief for this Court a coherent, and all-inclusive response.  *See* ECF. No. 34.

and Permanent Injunctive Relief, Declaratory Relief, Writ of Mandamus (28 U.S.C. § 1361), and a plea to this Court to prosecute their allegations via class certification of a putative "75,000 unprinted EAD" class membership. ECF No. 17, ¶¶ 1, 16-19, 72-114; ECF No. 2; ECF No. 5.

This Court, however, lacks jurisdiction over the amended complaint and petitions because Plaintiffs cannot demonstrate an Article III standing necessary to proceed.   In addition, even if the Plaintiffs, and the only identified, putative class member had standing, they fail to present a justiciable case for adjudication under the mootness doctrine, given that USCIS has already issued their EADs.   The Court therefore should dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1).

## NATURE OF THE PROCEEDING

### I.    PLAINTIFFS AND THEIR CLAIMS

On July 22, 2020, Plaintiff, Ranjitha Subramanya, residing in Westerville, Ohio, and the only identified, putative class member, Andrea La Manna, residing in Brooklyn, New York, filed this lawsuit seeking to compel Defendants to *issue* their employment authorization documents having *previously earned adjudication and approval* of their Form I-765 applications for eligibility for the EADs. ECF No. 1, ¶¶ 1, 15, 25, 38, 42, 43, 52; ECF No. 1-3, "Exhibit C"; ECF No. 2, PAGEID#: 38; ECF No. 5.   On Monday, July 27, 2020, Plaintiffs' counsel filed their "First Amended Class Action Complaint," making no new legal allegations or claims, retaining Ms. Subramanya as the lead, named party Plaintiff, but adding three more party Plaintiffs, Carlos Francisco Rodriguez Martinez, residing in Trenton, New Jersey, Lucrecia Rosa Ramos, and Kebin Palma Sanchez, both of whom reside in Los Angeles, California.   Like Ms. Subramanya, and Mr. La Manna, these new party Plaintiffs previously received adjudication and approval of their Form I-765 applications for eligibility for employment authorization documents, but ask this Court to order the Secretary of DHS to immediately print and issue the employment authorization documents.   *See* ECF No. 17, ¶¶ 1, 16-19.

2

On July 23, 2020, Ms. Subramanya's employment authorization document was produced by the USCIS Document Management Division, and was mailed the following day, July 24, 2020, to her address of record, ███████████ Westerville, Ohio, 43082 under USPS tracking 92055███████████.  *See* Declaration of Jared Goodwin, Division Chief, USCIS, DHS, signed July 27, 2020, hereinafter Goodwin, USCIS/DHS Decl. ¶ 5; ECF No. 1, ¶ 7; *see also* ECF No. 17, ¶ 7.   The USPS tracking website confirmed her receipt at 3:53 p.m. on Monday, July 27, 2020, and Plaintiffs' counsel so confirmed with the undersigned.   Also on July 24, 2020, USCIS, National Benefits Center (NBC) contacted the New York City USCIS Application Support Center (ASC) and Field Office to make a special dispensation for collection of Mr. La Manna's photograph and biometrics. The New York Field Office contacted Mr. La Manna and arranged a special appointment for Monday, July 27, 2020. The morning of that same day, Mr. La Manna's photograph and biometrics were captured,[2] and USCIS requested production of an EAD card. Given these ongoing, expedited efforts, there are no impediments to printing and issuance of his EAD. *See* Declaration of Nansi R. Troy, Acting Assistant Center Director for the NBC, USCIS, DHS, signed July 27, 2020, hereinafter Troy, NBC/USCIS/DHS Decl. ¶¶ 6, 7.

Because there does not exist a statutory, regulatory, or administrative time period for the issuance of EADs, the only Plaintiff residing in the State of Ohio possesses her EAD, and the only identified, putative class member's receipt of EAD is imminent, this Court should dismiss these claims and the class they seek to represent for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(3), and the mootness doctrine.

---

[2]Had this been Mr. La Manna's second I-765 application approval, USCIS would have been able to clone the previous biometrics and photograph and use them to produce a new EAD.   However, because he is a first-time applicant, no previous photograph and biometrics exists.  *See* Troy, NBC/USCIS/DHS Decl. ¶¶ 4, 6.

3

## II.    STATUTORY AND REGULATORY BACKGROUND

In the Immigration and Nationality Act (INA), Congress has charged the Secretary of DHS with the administration and enforcement of the immigration laws. 8 U.S.C. § 1003(a)(1). In doing so, it has vested the Secretary with discretion over immigration matters, authorizing him to "establish such regulations; . . . issue such instructions; and perform such other acts *as he deems necessary* for carrying out his authority" under the statute. 8 U.S.C. § 1003(a)(3) (emphasis added). That broad vesting of discretionary authority reflects the longstanding recognition that immigration is "a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program." *U.S. ex rel. Knauff Shaughnessy*, 338 U.S. 537, 543 (1950).

Recognizing that the immigration statutes vested the agency with broad discretion, USCIS (formerly the Immigration and Naturalization Service (INS)) promulgated regulations conferring on certain benefits recipients and/or applicants the discretionary privilege to obtain work authorization. *See* 8 C.F.R. § 274a.12. Certain classes of benefits recipients are authorized to be employed in the United States "incident to status." 8 C.F.R. § 274a.12(a). These persons are authorized to work as a condition of their admission as soon as the qualifying immigration benefit or status is granted, and they file Forms I-765 only to obtain documentary evidence (*e.g.*, for I-9 purposes) of the employment authorization they already have. 8 C.F.R. § 274a.12(a). Other classes of aliens may be eligible for employment authorization, but must file a Form I-765 application to receive discretionary work authorization. 8 C.F.R. § 274.12(c). For all eligibility classes in this subsection, USCIS may, in its discretion, grant work authorization and establish a specific validity period for such work authorization. *Id.* Certain aliens may be eligible for work authorization while their underlying immigration benefits or status applications remain pending. *See, e.g.*, 8 C.F.R. § 274.12(c)(8) (asylum applicants), (c)(9) (adjustment of status applicants), and (c)(19) (applicants for temporary protected status). Other

4

classes of aliens in this subsection may be eligible for work authorization based upon a status or circumstance that is unrelated to having a pending request for a separate immigration benefit. *See, e.g.*, 8 C.F.R. § 274.12(c)(14) (alien granted deferred action).

Moreover, an agency typically has discretion "to relax or modify its procedural rules adopted for the ordinary transaction of business before it." *Am. Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 539 (1970).

The regulation at issue here, 8 C.F.R. § 274a.13(b), is implicated if USCIS approves an application. It states: "Approval of application. If the application is granted, the alien shall be notified of the decision and issued an employment authorization document valid for a specific period and subject to any terms and conditions as noted." 8 C.F.R. § 274a.13(b).

This regulation is unambiguous. A plain reading of the regulation reveals that it contains two requirements: notice and issuance. First "the alien shall be notified of the decision…" 8 C.F.R. § 274a.13(b). Second "the alien shall be… issued an employment authorization document valid for a specific period and subject to any terms and conditions as noted." *Id*. Notably, 8 C.F.R. § 274a.13(b) contains no timeframe for the issuance requirement. Nor does it articulate a deadline for an alien's receipt of the EAD.

Indeed, there exists no C.F.R., statute, or regulation, internal, or external instruction to DHS, assigning either a specific deadline, or span of time wherein the EAD must arrive in the hands of the beneficiary of an approved Form I-765, no matter their classification.

Throughout their TRO motion, Plaintiffs rely on and quote 8 C.F.R. § 274a.13(b), which states that the alien "…shall be notified of the decision and issued an employment authorization document…"—but contains no timeframe for the issuance, much less a requirement for the alien's *receipt* of the EAD by any deadline. Plaintiffs point to no timeframe or potential source of a timeframe or deadline. *See* ECF No. 17, ¶¶ 20, 21, 74(d), 89, 93.

Plaintiffs also cite no authority for the statement that "[h]istorically, users has produced and mailed EADs to successful applicants within 48 hours of the approval." ECF No. 2 at 6; *see also* ECF No. 17 at 7.   It is mentioned in a *Washington Post* opinion piece that Plaintiffs provide, but again, there is no source for the claim. *See* ECF No. 2-3 at 4.

Acknowledging that it is the Secretary of DHS who is vested with broad discretionary authority to "establish such regulations; . . . issue such instructions; and perform such other acts *as he deems necessary* for carrying out his authority" under the statute, Plaintiffs are at the very least tacitly prohibited from creating an immigration-benefit regulation, much less creating their own private right of action to demand enforcement of a non-existent regulation.   8 U.S.C. § 1003(a)(3); *Shaughnessy*, 338 U.S. at 543.

## STANDARD OF REVIEW

The Court should dismiss the Plaintiffs' action for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).   Motions to dismiss under Rule 12(b)(1) fall into two general categories: facial attacks and factual attacks.   *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio National Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).   A facial attack to jurisdiction questions the sufficiency of the pleadings and is resolved using the familiar Rule 12(b)(6) standard; that is, the Court takes the material allegations in the complaint as true and construes them in a light most favorable to the non-moving party.   *See Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974) (overruled on other grounds).

In contrast, with a factual attack to subject matter jurisdiction, there is no presumptive truthfulness to the allegations made by plaintiffs.   *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *Ritchie*, 15 F.3d at 598; *Moir v. Greater Cleveland Regional Transit Auth.*, 896 F.2d 266, 269 (6th Cir. 1990).   In considering such a challenge, the Court must weigh the evidence to determine whether jurisdiction exists.   *Id.*; *DXL, Inc. v.*

*Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citations omitted). In this regard, the Court has wide discretion to allow affidavits, documents or even a limited evidentiary hearing to aid in resolving disputed jurisdictional facts. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *Ohio National Life, Ins.*, 922 F.2d at 325; *see also*, *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947) (holding that "when a question of the district court's jurisdiction is raised. . . the court may inquire by affidavits or otherwise, into the facts as they exist").

The plaintiff bears the burden of proving that subject-matter jurisdiction exists. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005); *DXL, Inc. v. Kentucky*, 381 F.3d at 516; *RMI Titanium*, 78 F.3d at 1134; *Moir*, 896 F.2d at 269; *see also Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

A Rule 12(b)(1) motion, when accompanied by evidentiary support, is not converted into a motion for summary judgment, and the court is empowered to resolve factual disputes. *Moir*, 896 F.2d at 269; *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

In this case, the Defendants' Motion to Dismiss presents both a facial and a factual challenge, under Rule 12(b)(1), to the Court's subject-matter jurisdiction. The Court should dismiss a suit brought by a plaintiff without Article III standing under Rule 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998).

## ARGUMENT

### I.  EVEN ASSUMING THE LEAD PLAINTIFF[3] HAS STANDING, HER CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE MOOT

In addition to failing to demonstrate that they have standing as discussed below, Ms. Subramanya's and Mr. La Manna's claims should be dismissed because they are moot.  Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of actual cases or controversies.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Mootness is "the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).  Under this requirement, "throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Spencer*, 523 U.S. at 7.  A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Toyo Tire Holdings of Am. v. Cont'l Tire of N. Am., Inc.*, 609 F.3d 975, 982-83 (9th Cir. 2010) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1984)).  Even if the plaintiff had standing when the complaint was filed, a case becomes moot "if it does not satisfy the case-or-controversy requirement of Article III, § 2 of the Constitution."  *Caswell v. Calderon*, 363 F.3d 832, 836 (9th Cir. 2004); *see also GATX/Airlog Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 192 F.3d 1304, 1306 (9th Cir. 1999) (holding that an actual controversy must exist "at all stages of

---

[3]Plaintiff amended her complaint within hours of the deadline assigned Defendants to respond to her original complaint and various petitions, including a TRO, disclosing and adding for the first time, three new party Plaintiffs.  ECF No. 1, 2, 5; ECF No. 17. All three of these new Plaintiffs reside well outside the jurisdiction of this Court (Los Angeles, CA, and Trenton, NJ). ECF No. 17, at caption, ¶¶ 1, 16-19. And the Amended Complaint did not share the same level of, or sufficient personally identifying information, as had the original Plaintiff and the only identified putative class member.   Thus, Defendants have not been able to investigate their claims and do not waive any right to move to dismiss them.

proceedings, not merely at the time when the complaint is filed."). An actual controversy must exist "at all stages of proceedings, not merely at the time when the complaint is filed." *Id.* If a case becomes moot, then the Court lacks jurisdiction because mootness is jurisdictional. *Tor v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009). A court should dismiss a case for lack of jurisdiction if the case becomes moot and if the court can no longer provide the petitioner with "effective relief." *GATX/Airlog Corp.*, 192 F.3d at 1306; *see also Spencer*, 523 U.S. at 7; *Tor*, 562 F.3d at 1214.

Claims seeking relief under section 706 of the APA and under the Mandamus Act are coextensive. *See Indep. Mining Co. v. Babbit*, 105 F.3d 502, 507 (9th Cir. 1997) ("[T]he Supreme Court has construed a claim seeking mandamus relief under the [Mandamus Act], 'in essence,' as one for relief under § 706 of the APA." (citing *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986))). A plaintiff must show "that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). If not, the claim "may be dismissed for lack of jurisdiction." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1019-20 (9th Cir. 2007) (citing *Gros Ventre Tribe v. United States*, 469 F.3d 801, 814 (9th Cir. 2006)). Moreover, because Plaintiff, Ms. Subramanya also seeks "declaratory and injunctive relief," "there is a further requirement that [she] show a very significant possibility of future harm; it is insufficient for [her] to demonstrate only a past injury." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

As explained, *supra* at 5, 8 C.F.R. § 274a.13(b)—the regulation at issue—contains only two requirements: notice and issuance. Here, USCIS has complied with both requirements as to Ms. Subramanya and Mr. La Manna. USCIS undisputedly has complied with the first requirement, in that both Ms. Subramanya and Mr. La Manna have "be[en] notified of the decision" approving

their applications (8 C.F.R. § 274a.13(b)). ECF No. 1, "Exhibit C,"; ECF No. 2 at 5-6; *id*. at 7; ECF No. 5 at ¶ 4.[4]

USCIS also has complied with the second requirement. It has issued Plaintiff, Ms. Subramanya's EAD, and she has it, in-hand. *See*, *supra* at 3. Mr. La Manna's receipt of his own EAD is imminent. On Monday, July 27, 2020, Mr. La Manna's photograph and biometrics were captured, and USCIS requested production of an EAD card. *See*, *supra* at 3. Given these ongoing, expedited efforts, there are no impediments to printing and issuance of his EAD. *See* Troy, NBC/USCIS/DHS Decl. ¶¶ 6, 7.

Therefore, any claims that either might have had in their individual capacity are moot and no longer present a case or controversy. *See GATX/Airlog*, 192 F.3d at 1306. The Amended Complaint therefore should be dismissed for lack of subject-matter jurisdiction as it relates to the Ms. Subramanya's claims, and any claims to which Mr. La Manna might make should he earn this Courts' recognition as a putative class member. *See* Fed. R. Civ. P. 12(b)(1).

## II. THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFFS AND THEIR PUTATIVE CLASS MEMBERS ALL LACK STANDING

The Court should dismiss Plaintiffs' claims and the theoretical claims of the putative "75,000 unprinted EAD" class members, both identified, and unidentified, for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts sit to decide cases and controversies,

---

[4]As stated, Defendants have not had sufficient time to investigate the three newly-added Plaintiffs' claims. It is clear from the face of the pleadings, however, that USCIS has—at the very least—complied with the first requirement (notice) for each of the three new Plaintiffs. *See* ECF No. 17 at ¶¶ 50 ("USCIS approved Plaintiff Rodriguez Martinez's Application for Employment Authorization on June 5, 2020."); 62 ("USCIS approved Plaintiff Ramos's Application for Employment Authorization on May 18, 2020."); 68 ("USCIS approved Plaintiff Sanchez's Application for Employment Authorization on June 17, 2020.").

The possibility exists that USCIS has already issued these individuals' EAD cards. Defendants reserve the right to update their instant Motion once it has investigated these claims.

not to resolve disagreements about policy or politics. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation and internal quotation omitted).

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). More concisely, these requirements are known as injury, causation, and redressability. *See Massachusetts v. E.P.A.,* 549 U.S. 497, 540 (2007) (Roberts, C.J., dissenting).

Article III standing "is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party asserting its claims in federal court bears the burden of establishing standing. *See id.* at 561.

To establish standing, a plaintiff must show that (1) the plaintiff has suffered an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and actual or imminent rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) a favorable decision on the judicial relief requested is likely to redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S.at 560-61).

The APA entitles a "person suffering legal wrong because of agency action" to "judicial review thereof." 5 U.S.C. § 702. The reviewing court must "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." *Id.* § 706. The court is empowered to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1); *see also Wong v. Napolitano*, No. CV-08-937-

11

ST, 2010 WL 916274, at *15 (D. Or. Mar. 10, 2010) ("The scope of a court's review is limited to compelling 'agency action unlawfully withheld or unreasonably delayed' . . . .") (quoting 5 U.S.C. § 706)). However, such a claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton*, 542 U.S. at 64. "Absent such an assertion, a Section 706(1) claim may be dismissed for lack of jurisdiction." *Alvarado v. Table Mountain Rancheria,* 509 F.3d 1008, 1019-20 (9th Cir. 2007); *see also Gros Ventre Tribe v. United States,* 469 F.3d 801, 814 (9th Cir. 2006) (upholding the district court's dismissal of an APA claim for lack of jurisdiction because the plaintiffs failed to demonstrate the government's obligation to "take discrete nondiscretionary actions"). Furthermore, "when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Norton,* 542 U.S. at 65 (clarifying that "law" can include "agency regulations that have the force of law").

   The Mandamus Act operates similarly in this context, empowering district courts "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361; *see also Garcia* v. *Johnson*, No. 10 14-cv-1775-YGR, 2014 WL 6657591, at *5 (N.D. Cal. Nov. 21, 2014) ("The jurisdictional dimensions of the APA and the Mandamus Act are considered to be coextensive for purposes of compelling agency action that has been unreasonably delayed."). "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the [Mandamus Act], 'in essence,' as one for relief under [Section] 706 of the APA." *Indep. Mining Co.* v. *Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japan Whaling Ass'n* v. *Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)); *see also Garcia*, 2014 WL 6657591, at *5 ("Where, as here, the relief sought is identical under the APA and the mandamus statute, proceeding under one as opposed to the other is not significant.").

The foregoing legal applications and analysis, as applied to this case, are simplified as there exists *no* C.F.R., statute, or regulation, internal, or external instruction to DHS, assigning either a specific deadline, or span of time wherein the EAD must arrive in the hands of the beneficiary of an approved Form I-765. Accordingly, Plaintiffs cannot demonstrate injury, causation, or redressability.

First, Plaintiffs cannot establish injury or causation because their entire lawsuit is based on a timeline requirement that does not exist.

It is the Secretary of DHS who is vested with broad discretionary authority to "establish such regulations; . . . issue such instructions; and perform such other acts *as he deems necessary* for carrying out his authority" under the statute. 8 U.S.C. § 1003(a)(3); *Shaughnessy*, 338 U.S. at 543.

Moreover, an agency typically has discretion "to relax or modify its procedural rules adopted for the ordinary transaction of business before it." *Am. Farm,* 397 U.S. at 539.

Throughout their TRO motion, Plaintiffs rely on and quote 8 C.F.R. § 274a.13(b), which states that the alien "…shall be notified of the decision and issued an employment authorization document…"—but contains no timeframe for the issuance, much less a requirement for the alien's *receipt* of the EAD by any deadline. Plaintiffs point to no timeframe or potential source of a timeframe or deadline. *See* ECF No. 17, ¶¶ 20, 21, 74(d), 89, 93.

Plaintiffs also cite no authority for the statement that "[h]istorically, users has produced and mailed EADs to successful applicants within 48 hours of the approval." ECF No. 2 at 6; *see also* ECF No. 17 at 7. It is mentioned in the *Washington Post* article, but again, there is no source for the claim. *See* ECF No. 2-3 at 4.

On the contrary, Plaintiffs' putative "75,000 unprinted EAD" class members' filing of EAD applications did not create any vested right to an immigration benefit, particularly for those applicants whose EADs are granted in the discretion of USCIS. *See* 8 C.F.R. § 274a.13(a)(1).

13

In fact, the Ombudsman of Defendant DHS confirmed, and acknowledged to the public, before

this present action was filed with this Court, that printing and mailing EADs to successful

applicants is "backlogged.:"

July 21, 2020

Dear Stakeholder:

In June 2020, U.S. Citizenship and Immigration Services (USCIS) reduced its capacity to print secure documents, such as Lawful Permanent Resident (LPR) Cards and Employment Authorization Documents, after it ended a contract with an outside company responsible for printing these cards. According to USCIS, it intended to hire federal employees to replace the contractors; however, its financial situation resulted in a hiring freeze that has impacted the printing of these secure cards.

Stakeholders are submitting requests for case assistance to the Office of the Citizenship and Immigration Services Ombudsman (Ombudsman), confirming there are delays in receiving these secure documents. USCIS expects these backlogs will continue for the foreseeable future. Should there be a furlough of USCIS employees on August 3, 2020, card production backlogs will likely increase.[5]

The Ombudsman is assisting individuals whose applications have been approved but whose cards have not yet been produced, by sending weekly spreadsheets to USCIS to verify card requests are in line to be processed. If you are experiencing a delay in receiving your secure document, you may submit a request for case assistance with the Ombudsman at https://www.dhs.gov/topic/cis-ombudsman/forms/7001.

LPRs may obtain proof of their status by requesting a stamp of temporary evidence in a valid passport. Please reach out to USCIS' Contact Center (800-375-5283) to make an appointment at your local USCIS field office.

*See* https://content.govdelivery.com/accounts/USDHS/bulletins/2969646

This notice from Defendant DHS' spokesperson/Ombudsman does not acknowledge, much less

corroborate Plaintiffs' or the *Washington Post* article's self-made 48-hours from approval timeline.

---

[5]USCIS was originally set to furlough some 13,400 employees on Aug. 3 — unless Congress came through with emergency funding. The furloughs were expected to last anywhere between 30-to-90 days, though the agency acknowledged they could last longer.  However, in a news release dated Monday, July 27, 2020, it was announced:  "Recent assurances from Congress, and an uptick in application and petition receipts, have allowed USCIS senior leadership the flexibility to responsibly delay the start date of the administrative furlough of approximately 13,400 USCIS employees until Aug. 30," Jessica Collins, an agency spokeswoman, said in a statement to Federal News Network. "This delay is intended to allow Congress enough time to act and provide USCIS with the funding needed in order to avert the administrative furlough all together." *See* https://federalnewsnetwork.com/workforce/2020/07/with-improved-financial-outlook-uscis-buys-more-time-to-avoid-employee-furloughs/

In fact, the foregoing public notice — expressly citing "contractual," "financial" and existing and ongoing personnel shortages — is nothing more or less than the Secretary of DHS "…perform[ing] such other acts *as he deems necessary* for carrying out his authority" under the statute. 8 U.S.C. § 1003(a)(3); *Shaughnessy*, 338 U.S. at 543; *see also Sierra Club v. E.P.A.*, 762 F.3d 971, 979-82 (9th Cir. 2014) (holding that the application of new regulations to pending applications is proper even where agency action has been unreasonably delayed).

Accordingly, Plaintiffs' and their putative "75,000 unprinted EAD" class members' filing of EAD applications did not create any vested right to an immigration benefit, particularly for those applicants whose EADs are granted in the discretion of USCIS. *See* 8 C.F.R. § 274a.13(a)(1).

The decision of the Defendant Secretary of DHS to forego issuing instruction or regulation assigning a timeline or deadline to Plaintiffs' receipt of an EAD upon approval of their I-765 does not violate any enforceable legal right belonging to Plaintiffs, or any member of their "75,000 unprinted EAD" putative class. Instead, through his Ombudsman, Defendant has confirmed, and acknowledged to the public, before this present action was filed with this Court, that printing and mailing EADs to successful applicants is backlogged expressly citing "contractual," "financial" and existing and ongoing personnel shortages," and "[i]f you are experiencing a delay in receiving your secure document, you may submit a request for case assistance with the Ombudsman at https://www.dhs.gov/topic/cis-ombudsman/forms/7001."

Thus, without a C.F.R., statute, or regulation, internal, or external instruction of which Defendants could be in violation, it is axiomatic that Defendants actions do not violate any enforceable legal right belonging to Plaintiffs, or their putative class, and thus they cannot demonstrate "injury," as a requirement of standing. *See Norton*, 542 U.S. at 64; *Vietnam Veterans of Am. v. Central Intelligence Agency*, 811 F.3d 1068, 1075-76 (9th Cir. 2015) (quoting *Norton*, 542 U.S. at 63-64) ("A court can compel agency action under [the APA] only if there is 'a specific,

15

unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action."); *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 801 (9th Cir. 2013) (concluding that because the agency "is not legally required to take a discrete action," the plaintiffs "have not established subject matter jurisdiction under the APA"); *Huang v. Mukasey*, 545 F. Supp. 2d 1170, 1172-73 (W.D. Wash. 2008) (treating the Mandamus Act as jurisdictional); *Ctr.for Biological Diversity v. Veneman*, 394 F.3d 1108, 1113 (9th Cir. 2003) ("Because the [plaintiff] fails to allege a discrete agency action that the [defendant] failed to take, the [plaintiff] has no *standing* under [the APA]." (emphasis added)).

Second, Plaintiffs cannot establish redressability.  There are no grounds to sanction the Government for alleged noncompliance with the regulation, since the regulation contains no timeframe.   A statutory or regulatory time limitation is not mandatory unless it both (1) "expressly requires an agency or public official to act within a particular time period" and (2) "specifies a consequence for failure to comply with the provision."   *Brock v. Pierce County,* 476 U.S. 253, 259 (1986) (internal citation and quotations omitted); *see United States v. James Daniel Good Real Property*, 510 U.S. 43, 63 (1993) ("If a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."); *United States v. Montalvo-Murillo*, 495 U.S. 711, 711-12 (1990) ("There is no presumption or rule that for every mandatory duty imposed upon the. . . Government . . . there must exist some corollary punitive sanction for departures or omissions, even if negligent."); *Hendrickson v. FDIC,* 113 F.3d 98, 102 (7th Cir. 1997) ("absent a clear indication to the contrary, regulatory deadlines, like statutory deadlines, provide no remedy for their own violation.").

In *Brock*, Congress imposed a requirement that the Department of Labor audit certain grant recipients within 120 days of receiving a complaint, but the agency audited a recipient after that deadline had passed.   476 U.S. at 255-56.   The Court rejected respondent's argument that the

Secretary was precluded from acting after the 120-day statutory period. *Id.* at 257-60. The Court found no basis to create and apply a sanction for "every failure of an agency to observe a procedural requirement" where Congress did not specify a consequence for failing to comply with the time period. *Id.* at 260. The Court further rejected the respondent's claim that the Secretary's own regulations—which provided a timetable for the resolution of complaints and audits—precluded the Secretary from acting after the time limitation. *Id.* at 265. The Court held that "even if it were possible for the Secretary to create a jurisdictional limitation not contained in the statute," there was no sanction for violating the regulation because it did not specify a consequence of failing to meet the deadline. *Id.*

The courts may not "invent a remedy to satisfy some perceived need to coerce the . . . Government into complying with the statutory time limits." *Montalvo-Murillo*, 495 U.S. at 717. Moreover, the agency cannot create a mandatory time limitation by regulation where it does not exist in the statute. *Brock*, 476 U.S. at 265 (stating that "even if it were possible for the Secretary to create a jurisdictional limitation not contained in the statute," violation of the time limitation was not sanctionable). Because Congress did not intend for any statutory timelines relating to issuance of EADs, pursuant to approval of a I-765, the absence of such a regulation cannot create a mandatory time limitation. *See Dipeppe v. Quarantillo*, 337 F.3d 326, 333-34 (3d Cir. 2003) (finding failure to comply with statute requiring Attorney General to begin removal proceedings "as expeditiously as possible" is not actionable where former 8 U.S.C. § 1229(d)(2) provided that "nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable").

Plaintiffs and their putative "75,000 unprinted EAD" class members cannot show that USCIS failed to take a discrete agency action it was required to take (*i.e.*, issue EAD cards to approved I-765 applicants in a 48-hour window) for the pending and future EAD printing and issuance. *See*

*Norton*, 542 U.S. at 64; 5 U.S.C. § 706(1). Plaintiffs and the putative "75,000 unprinted EAD" class members, both identified, and unidentified, have failed to demonstrate standing.

## III. THE COURT SHOULD DISMISS THE CASE BECAUSE VENUE DOES NOT EXIST IN THIS DISTRICT

The Court should dismiss the Amended Complaint under Fed. R. Civ P. 12(b)(3) because venue does not exist in the Southern District of Ohio. Plaintiffs' claim that venue is proper in this district and division pursuant to 28 U.S.C. § 1391(e). ECF No. 17, ¶ 25. However, a closer look at the Amended Complaint clearly reveals that Plaintiffs fail to satisfy the standards of § 1391(e). In a civil action where the defendant is an officer or employee of the United States, venue is proper: "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e).

Now that Plaintiff Ranjitha Subramanya, who resides in Westerville, Ohio (ECF No. 17, ¶ 16), has received her EAD, her claims are moot, and, therefore, she does not have a live case or controversy before this Court. *See*, *supra* 7-9. And none of the Plaintiffs with live claims reside in this District—Plaintiff Carlos Francisco Rodriguez Martinez resides in Trenton, New Jersey (ECF No. 17, ¶ 17); Plaintiffs Lucrecia Rosa Ramos and Kebin Palma Sanchez reside in Los Angeles, California (*id*., ¶¶ 18, 19); and putative class member Andrea La Manna resides in Brooklyn, New York (Declaration of Andrea La Manna, ¶¶ 1-2, 4). Similarly, the identified federal agencies or officers, in their official capacities, do not reside in this District. *See, e.g.*, *Feng Chen on behalf of Jiang Jinghon v. Sessions*, 321 F. Supp. 3d 332, 336 (E.D.N.Y. 2018) ("Because neither the defendants nor the plaintiffs reside there, the attorney's office location cannot support venue in this district unless a substantial part of the events or omissions giving rise

to this claim occurred there. 28 U.S.C. § 1391(e)(1).").   Nor do Plaintiffs claim that other putative class members may be located in this District.   However, and even if Plaintiffs had made this speculation, it would not matter here because determination of proper venue is generally based on the named plaintiff, not unnamed or absent putative class members.  *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014 WL 296159, at *5-6) (N.D. Cal. Jan. 27, 2014) (listing cases supporting its conclusion that "it is the named plaintiff's claim that 'must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification."); *see also See Johnson v. Law*, 19 F. Supp. 3d 1004, 1009 (S.D. Cal. 2014).

Moreover, Plaintiffs fail to allege that *any* of the material events or omissions that form the factual predicate of the claims in the amended complaint occurred in this District. *See* ECF No. 17, ¶¶ 9, 78-118 (alleging that Defendants "unlawfully withheld and/or unreasonably delayed" issuing EADs in violation of the Due Process Clause and the APA.").   Thus, Plaintiffs have failed to establish a nexus between their claims and this District. *See e.g.*, *Emrit v. Trump*, No. 1:19-CV-18, 2019 WL 140107, at *3 (S.D. Ohio Jan. 9, 2019) (dismissing the case after determining that "[n]either President Trump nor any of the identified federal agencies reside in Ohio, and none of Plaintiff's allegations or claims (which primarily focus on the recent imposition of trade tariffs on China) relate to any 'substantial' events in Ohio"), *report and recommendation adopted*, No. 1:19CV018, 2019 WL 935028 (S.D. Ohio Feb. 26, 2019); *Patton-Bey v. Fed. Bureau of Prisons*, 173 F.3d 856 (6th Cir. 1999) (finding that the plaintiff failed to satisfy § 1391(e) where he "failed to raise his claims in a judicial district where any defendant resided or where a substantial part of

the alleged events occurred").   Accordingly, Plaintiffs do not meet any of § 1391(e)'s criteria and, thus, venue in this Court is improper.[6]

## IV.   THE COURT SHOULD STRIKE PLAINTIFFS' ELEVENTH-HOUR DECLARATIONS

Moments before Defendants filed their instant Motion, Plaintiffs filed 16 declarations, (ECF Nos. 18-33).   12 of these represent 14 individuals[7].   Plaintiffs offered no basis – such as a federal or local rule – allowing them to file these declarations.   This seeming "piling-on" of filings does not comport with permissible pleadings under the Federal Rules of Civil Procedure 7(a), and there exists nowhere in this docket the request to file some alternative to otherwise permissible pleading as instructed at 7(b)(1).   This procedural anomaly is especially concerning considering that Plaintiffs filed an Amended Complaint only one day ago – and Plaintiffs offered no reason why these declarations could not have accompanied that filing.   *See* ECF No. 17.[8]   Accordingly, the Court should strike these errant declarations.

Even if these declarations could somehow be construed as some form of Second Amended Complaint, the Court should strike the declarations. Under the Federal Rules of Civil Procedure, a Party may amend its pleading *once* as a matter of course within 21 days after serving it. Fed. R.

---

[6]Alternatively, the Court should transfer each case to a more appropriate forum under 28 U.S.C. § 1404(a).

[7]ECF No. 20, purports to be a single declaration on behalf of a family of three.

[8]The Court should strike the First Amended Complaint because Plaintiffs failed to seek leave of Court and notify Defendants before adding parties to the lawsuit. Courts in the Sixth Circuit have held that Rule 21 governs dropping or adding parties and that an amended pleading altering the parties requires leave of court as prescribed in Rule 21, even though it is filed within the time period allowed for an amendment as a matter of course under Rule 15(a)(1). *See Internat'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. AFL-CIO*, 32 F.R.D. 441, 442 (E.D. Mich. 1963); *Keller v. University of Mich.*, 411 F. Supp. 1055, 1057 (E.D. Mich. 1974). *Cf. Pethel v. Washington Cty. Sheriff's Office*, No. 2:06-CV-799, 2007 WL 2359765, at *4 (S.D. Ohio Aug. 16, 2007) (collecting cases and acknowledging that the Sixth Circuit has not resolved whether leave of court is required to add parties prior to a responsive pleading). At the very least, the Court should allow Defendants reasonable time to investigate the three newly-added Plaintiffs' claims and amend the instant Motion, ECF No. 17.

Civ. P. 15(a)(1)(A). But "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Here, Plaintiffs have neither sought leave from this Court nor obtained Defendants' written consent.  Therefore, their newly-filed declarations (ECF Nos. 18-33) must be stricken.[9]

## V.    PLAINTIFFS IMPROPERLY SEEK CLASSWIDE RELIEF

Finally, Plaintiffs ostensibly request relief on behalf of 75,000 putative class members. ECF No. 1 at ¶ 1. (seeking "temporary, preliminary and permanent mandatory injunctive relief, declaratory relief, and a writ of mandamus to compel Defendants to perform their clear legal duty to issue Employment Authorization Documents ("EADs") to Plaintiff and class members after approving their Applications for Employment Authorization."); ECF No. 1, Prayer for Relief ¶¶ a-f; *see also* ECF No. 17, ¶¶ 1, 72-77.  But Plaintiffs have not obtained class certification or even filed a motion to do so.  And their Amended Complaint raises only conclusory allegations that the putative class satisfies Federal Rule of Civil Procedure 23's requirements.  *See* ECF No. 1 at ¶¶ 40-46; *see also* ECF No. 17, ¶¶ 72-77.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (individuals seeking to bring a class action must satisfy "four requirements—numerosity, commonality, typicality, and adequate representation").  Without satisfying Rule 23, Plaintiffs cannot justify "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."

---

[9]If the Court is inclined to consider Plaintiffs' brand-new declarations, Defendants reserve the right to move to dismiss or otherwise challenge their claims.   By filing 12 declarations representing 14 potential plaintiffs and/or class members just before Defendants are otherwise ordered to file their instant Motion, Plaintiffs precluded Defendants from conducting even a superficial investigation of the allegations contained the those declarations.

*Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979). As such, their claims for sweeping relief should be dismissed as improperly pleaded.

## CONCLUSION

The only party Plaintiff residing in the State of Ohio, Ms. Subramanya, has received satisfaction of the mandamus component to her action, having received in fact the EAD card prayed-for. The statutory and regulatory silence on a timeline or deadline for issuance of EADs cannot and should be substituted by self-made expectation, and a claim of a vested right to an immigration benefit. Defendant explains its own dissatisfaction with a delay of issuance of EADs born entirely from the exercise of broad discretionary authority to "establish such regulations; . . . issue such instructions; and perform such other acts *as he deems necessary* for carrying out his authority" under the statute. For all of the foregoing reasons, Defendants ask this Court to dismiss the claims of the Plaintiffs and their putative class members.

Respectfully submitted,

DAVID M. DEVILLERS
United States Attorney

s/Christopher R. Yates
CHRISTOPHER R. YATES (0064776)
Assistant United States Attorney
Counsel for Defendants
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 469-5715
Christopher.Yates@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed on the 28th day of July 2020, using the Court's CM/ECF system, which will notify all counsel of record.

s/Christopher R. Yates
CHRISTOPHER R. YATES (0064776)
Assistant United States Attorney