# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **Ranjitha Subramanya, et al.** *individually and on behalf of a class of those similarly situated*, | : : : : |
| Plaintiffs, | : Case No. 2:20-CV-3707 : |
| v. | : Chief Judge Algenon L. Marbley : |
| **United States Citizenship and Immigration Services, et al.** | : : : Magistrate Judge Deavers : |
| Defendants. | : |

## ORDER

This matter is before the Court on Plaintiffs' Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2, No. 17). On July 28, 2020, Defendant filed a response requesting that this Court dismiss Plaintiffs' complaint. (ECF No. 35). This Court held a hearing on the motion for a TRO on July 29, 2020 at 3:00 p.m. For the reasons set forth below, this Court **GRANTS** Plaintiffs' motion for a temporary restraining order (ECF No. 2, No. 17) and **DENIES** Defendants' Motion to Dismiss (ECF No. 35).

## I. BACKGROUND

Plaintiff, Ms. Ranjitha Subramanya, is a native of India, but is in the United States as a nonimmigrant with H-4 status. (ECF No. 2 at 5). She had previously been granted an Employment Authorization Document ("EAD") which expired on June 7, 2020. *Id*. Before the card expired, in December 2019, Ms. Subramanya applied for an extension of her H-4 status and for an extension of her EAD. *Id*. at 5-6. Ms. Subramanya's application for an extension of her status and for the EAD was granted by USCIS on April 7, 2020. Despite the fact that her application for an EAD

had been granted, however, USCIS had not printed or mailed her this card. *Id*. at 6. Since June 7, 2020, Ms. Subramanya has been unable to work. *Id*. at 15.

Plaintiff Subramanya alleges that USCIS typically produces and mails EADs to approved applicants within 48 hours of approval, but that USCIS is experiencing delays with production because it terminated a contract with a printing company that it had previously used to print these cards. *Id.* at 8. Plaintiff alleges that the EAD is the only document that is legally sufficient to provide evidence of her legal authorization to work in the United States and that her employer has notified her that she will be terminated if she does not provide a valid unexpired EAD by August 9, 2020. *Id*. at 6.

On July 22, 2020, Plaintiff filed this suit, for herself and on behalf of a class of similarly situated individuals, requesting that this Court order USCIS to print her EAD within seven days, pursuant to 28 U.S.C § 1361, the Administrative Procedures Act, 5 U.S.C. § 706(1)-(2) and the Due Process Clause of the Fifth Amendment of the United States Constitution.

On July 27, 2020 Plaintiffs' counsel filed an amended complaint adding as Plaintiffs Carlos Francisco Rodriguez Martinez, Lucrecia Rosa Ramos, and Kebin Palma Sanchez. (ECF No. 17 at 5-6). Mr. Martinez is a native and citizen of Honduras and resides in Trenton, New Jersey. *Id*. at 5. His application for an EAD was approved on June 5, 2020, but he has not received his EAD. *Id*. Plaintiff Ramos is a native and citizen of Guatemala residing in a Los Angeles homeless shelter. *Id*. Ramos' application for an EAD was approved on May 18, 2020 but Ramos has not received their EAD. Plaintiff Sanchez is a native and citizen of Honduras, also residing in a Los Angeles homeless shelter. *Id*. His application for an EAD was approved on June 17, 2020 but Mr. Sanchez has not received his EAD.

2

In the amended complaint, Plaintiffs' counsel provides an update as to Plaintiff Subramanya's EAD. Apparently, on July 24, 2020, USCIS notified Plaintiff Subramanya that it had mailed her EAD to her. (ECF No. 17 at 4). On July 28, 2020 Plaintiffs' counsel indicated that Ms. Subramanya had received her EAD. (ECF No. 34). In lieu of a response, the United States filed a motion to dismiss Plaintiffs' complaint arguing that Plaintiff Subramanya's claims are moot, that venue is not proper in the Southern District of Ohio, and that this Court lacks jurisdiction to review the individual and class claims. (ECF No. 35).

## II.     STANDARD OF REVIEW

A Temporary Restraining Order ("TRO") is an emergency measure. *See McGirr v. Rehme*, Case No. 16-464, 2017 U.S. Dist. LEXIS 61151, at *10 (S.D. Ohio Apr. 21, 2017). Federal Rule of Civil Procedure 65(b), on an application for a temporary restraining order, requires a Court to examine whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979).

To obtain temporary injunctive relief, it is of paramount importance that the party establish immediacy and irreparability of injury. *See, e.g., Women's Med. Prof'l Corp. v. Baird*, No. 03-CV-162, 2008 WL 545015, at *1–2 (S.D. Ohio Feb. 27, 2008) (focusing on the irreparability and immediacy of harm before ruling on motion for TRO). While a Court is permitted to consider the four factors required for issuance of a preliminary injunction, immediacy and irreparability of harm are threshold considerations and "all that is required." *ApplianceSmart, Inc. v. DeMatteo*, 2018 WL 6727094, at *2 (S.D. Ohio Dec. 21, 2018). The "burden of proving that the circumstances

3

'clearly demand' such an extraordinary remedy is a heavy one" since the party seeking "the injunction must establish its case by clear and convincing evidence." *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Overstreet v. Lexington–Fayette UrbanCnty. Gov't,* 305 F.3d 566, 573 (6th Cir.2002)); *Honeywell, Inc. v. Brewer–Garrett Co.,* 145 F.3d 1331 (6th Cir.1998)).

### III. ANALYSIS

#### A. Jurisdiction

Defendants' Motion to Dismiss argues that this Court lacks jurisdiction to adjudicate Plaintiffs' claims because: (1) Plaintiff Subramanya has received her EAD and her claims are therefore moot; (2) venue is not proper in this Court since Plaintiff Subramanya's claims are moot and since Plaintiffs fail to allege that any of the material events or omissions at issue in this case occurred in this district; (3) Plaintiffs lack standing since the statute requiring EADs to be issued does not specify a time frame for printing and therefore Plaintiffs can state no redressable injury. (ECF No. 35). For the reasons indicated below, this Court finds that it has jurisdiction to adjudicate Ms. Subramanya's claims on behalf of a class.

**1. Whether Ms. Subramanya's claims are Moot**

Defendants first argue that Ms. Subramanya's individual Claims are moot and that she therefore cannot serve as a class representative because she has received her EAD. (ECF No. 35 at 8). Plaintiffs argue that although Ms. Subramanya has received her EAD, several of the exceptions to the mootness doctrine apply that permit her to remain in the case as a named plaintiff.

Article III, § 2 of the United States Constitution vests federal courts with jurisdiction to address "actual cases and controversies." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (citing U.S. CONST. art III, § 2). Federal courts are

4

prohibited from rendering decisions that "do not affect the rights of the litigants." *Id.* (citing *Southwest Williamson County Cmty. Assoc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001)). This is broadly known as justiciability doctrine and encompasses the concepts of mootness and ripeness. A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *See Cleveland Branch, N.A.A.C.P. v. City of Parma, OH,* 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). In essence, the mootness doctrine posits that cases, which, due to changed circumstances, can no longer impact the interests of the litigants, may not be adjudicated in the federal courts. *See DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (finding moot plaintiff's case challenging the constitutionality of a state law school's admissions process where plaintiff was nearing completion of his final year in law school when the case reached the United States Supreme Court for review and he would not go through law school admission process again). Finally, although a plaintiff generally has the burden of demonstrating that a court has jurisdiction over its claims, the "heavy burden" of demonstrating mootness falls on the party asserting it. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 189 (2000).

      There are exceptions to the mootness doctrine. First, a case will not be dismissed when a plaintiff's claim has become moot if the circumstances are such that the injury is capable of repetition, yet evading review. *Weinstein v. Bradford,* 423 U.S. 147, 148–49, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Second, there exists an exception for inherently transitory matters. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (noting that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.") (internal citations

and quotation marks omitted). Third, the picking-off exception to the applicability of mootness doctrine applies to prevent "defendants from strategically avoiding litigation by settling or buying off individual named plaintiffs in a way that 'would be contrary to sound judicial administration.'" *Unan v. Lyon*, 853 F.3d 279, 285 (6th Cir. 2017).

The Supreme Court recognizes an exception to mootness in cases that are "capable of repetition, yet evading review." *See Murphy v. Hunt,* 455 U.S. 478, 102 S. Ct. 1181, 71 L.Ed.2d 353 (1982). The Court has explained that, "the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). The capable of repetition yet evading review exception applies here because the challenged action of a delay in printing EADs will always be too short to be fully litigated, since the longest delay alleged here was approximately 100 days. *See e.g., Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976, 195 L. Ed. 2d 334 (2016) (applying capable of repetition yet evading review mootness exception and noting "[w]e have previously held that a period of two years is too short to complete judicial review of the lawfulness of the procurement."). This exception also applies because Ms. Subramanya will likely have to renew her application for an EAD in the future. If she is approved, she will face the same delays that are challenged as unreasonable in the instant case. *See Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (noting the proper focus is whether "'the controversy was *capable* of repetition and not ... whether the claimant had demonstrated that a recurrence of the dispute was more probable than not.'") (internal citations omitted) (emphasis in original)).

The inherently transitory exception to mootness also applies in this case. The inherently transitory exception permits a plaintiff whose own claim has become moot to continue to represent the class where: "(1) … the injury [is] so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury." *Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016). This exception applies here since any named plaintiff's EAD will likely be issued before this Court can certify a class and because it is certain that other putative class members are suffering the same injury. Plaintiffs have submitted a large number of declarations of potential class members and at the hearing, this Court heard testimony from putative class members facing this same issue.

Finally, the picking off exception to mootness also applies in this case. The picking off exception applies where a defendant "picks off named plaintiffs in a class action before the class is certified." *Wilson*, 822 F.3d at 947. The Sixth Circuit has clarified that this doctrine applies where "the defendant is on notice that the named plaintiff wishes to proceed as a class, and the concern that the defendant therefore might strategically seek to avoid that possibility exists." *Id.* Although this lawsuit challenges unreasonable delay, the reason why each named Plaintiff's claim is inherently transitory is that USCIS can moot that representative Plaintiff's claim by expediting the printing of that individual's EAD so as to defeat a class action.

Therefore, this Court finds that Plaintiff Subramanya's claims are not moot.

**2. Whether Venue is Proper in the Southern District of Ohio**

Defendant also argues that venue is not proper in this Court since Plaintiff Subramanya's claims are moot and since Plaintiffs fail to allege that any of the material events or omissions at issue in this case occurred in this district. (ECF No. 35 at 18). As indicated above, Ms. Subramanya's claims for relief are not moot. Furthermore, pursuant to 28 U.S. Code § 1391(e), in

actions where the Defendant is "an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States," venue is proper:

> in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, **or** (C) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

28 U.S. Code § 1391(e). Because Plaintiff Subramanya resides within this judicial district, venue is proper here. *See Stafford v. Briggs*, 444 U.S. 527, 542 (1980) ("the Committees, and the Congress intended nothing more than to provide nationwide venue for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government."); *Sidney Coal Co., Inc. v. Massanari*, 221 F. Supp. 2d 755, 767 (E.D. Ky. 2002) ("under 28 U.S.C. § 1391(e), this Court concludes that a suit can be brought in a district in which a single plaintiff resides.").

### 3. Plaintiffs' Standing for Claims of Unreasonable Delay

Defendants also argue that Plaintiffs lack standing since the statute requiring EADs to be issued does not specify a time frame for printing and therefore Plaintiffs can state no redressable injury. (ECF No. 35).

The APA states that when reviewing agency action, a "reviewing court shall— (1) compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Supreme Court has clarified that actions brought pursuant to § 706(1) require, as a threshold matter, that that the action to be compelled is (1) a "discrete agency action" and (2) a "legally required" action and not a discretionary action. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The requirement that the agency action to be compelled be "discrete" is intended to prohibit "broad

programmatic attacks" that are better suited for "wholesale improvement … in the offices of [an agency] or the halls of Congress, where programmatic improvements are normally made." *Id*. (quoting *Lujan v. Natl. Wildlife Fedn.*, 497 U.S. 871, 891 (1990)). The requirement that the action to be compelled be a non-discretionary legally required action is intended to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Id*. at 66.

Here, the agency action to be compelled is both "discrete" and a non-discretionary legally required action. First, the action to be compelled—the printing of Plaintiffs' EADs— is a discrete act that USCIS undertakes in all instances where an individual's application for an EAD has been approved. It does not involve the broad programmatic changes or the critique of generally applicable policies that were rejected by the Supreme Court in *Lujan*, and instead focuses on the agency's act (failure to print a document) in relation to a particular claimant's case. Furthermore, the action to be compelled is a non-discretionary, legally required act because USCIS is required by law to print EADs when an application is approved and USCIS has no discretion in the matter. *See* 8 CFR § 274a.13(b) ("If the application is granted, the alien **shall** be notified of the decision **and issued** an employment authorization document valid for a specific period and subject to any terms and conditions as noted.") (emphasis added). The applicable regulatory framework requires USCIS to issue an EAD once the individual's application has been granted.

Defendants argue that there is no statute or regulation that assigns a specific deadline or timeline for printing and mailing EADs and as a result, Plaintiffs cannot establish injury, causation, or redressability based on the Defendants' failure to print and mail EADs within 48 hours. (ECF No. 35 at 10-14).

9

With respect to Defendants' arguments on injury and causation, Defendants' argument misses the mark by framing the entitlement at issue too narrowly. Defendants argue that Plaintiffs have no legal right to receive their EADs within 48 hours and that as a result they can neither establish injury nor causation for the delay in obtaining their EADs. (ECF No. 35 at 15). Defendants do not dispute that 8 CFR § 274a.13(b) requires them to issue EADs for approved applicants, arguing instead that the lack of a timeframe gives USCIS discretion to decide when to issue the EADs. First, Plaintiffs do not claim a right to receive their EADs within 48 hours. They merely indicate that USCIS has historically printed and mailed EADs within 48-hours of their approval. The injury claimed in this case is the unreasonable delay in the printing of the EADs as a result of USCIS' actions. This is an injury that is contemplated by the APA, since it provides a redress mechanism for individuals affected by an agency's unreasonable delay where the action that is to be compelled is non-discretionary.

The fact that there is no statute or regulation setting a timeline for action does not mean that the agency retains unfettered discretion to issue EADs at any time they wish. In fact, courts reviewing similar claims have determined that the absence of a timeline in a statute or regulation means that the court retains jurisdiction to decide whether the delay was unreasonable. *See Geneme v. Holder*, 935 F. Supp. 2d 184, 192 (D.D.C. 2013) (noting that since the adjustment of status statute does not specify that USCIS has discretion to decide "whether and when to adjudicate applications for adjustment of status," the court "retains jurisdiction over Ms. Geneme's claim that it has unreasonably delayed the adjudication.") (citing *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007)); *Shah v. Hansen*, 1:07 CV 1576, 2007 WL 3232353, at *7 (N.D. Ohio Oct. 31, 2007) (finding that court had jurisdiction to determine whether USCIS' delay in adjudicating plaintiff's application was unreasonable despite absence

10

of deadline in statute where statutory scheme required USCIS to adjudicate plaintiff's applications in a reasonable time). This is because the purpose of § 706(1) of the APA is to provide individuals affected by unreasonable delays with a mechanism for compelling non-discretionary agency action. Furthermore, agency action is guided by another provision of the APA which requires that agencies act within a reasonable time. *See* 5 U.S.C. § 555(b) ("…With due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it.") (emphasis added). This requirement, to conclude a matter within a reasonable time, also applies to USCIS. *See Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) (noting that even without a statutory or regulatory deadline, at some point USCIS' "failure to take any action runs afoul of section 555(b)"); *Alkassab v. Rodriguez*, No. 2:16-cv-1267, 2017 WL 1232428, at *5 (D.S.C. Apr. 3, 2017) (finding that USCIS' compliance with the APA is not immune from judicial review and "failure to take any action on an immigration application could run afoul of the requirement that an agency conclude the matters presented to it within a reasonable time"); *Houle v. Riding*, No. cv-f-07-1266, 2008 WL 223670, at *4 (E.D. Ca. Jan. 25, 2008) (finding that courts have subject-matter jurisdiction when the APA is combined with 28 U.S.C. § 1331). Accordingly, Plaintiffs have sufficiently stated both injury and causation.

Defendants also argue that Plaintiffs cannot establish redressability because there are "no grounds to sanction the Government for alleged noncompliance with the regulation, since the regulation contains no timeframe," citing the Supreme Court's opinion in *Brock v. Pierce County*, 476 U.S. 253, 254 (1986). (ECF No. 35 at 16). Defendants, however, misread *Brock* and misunderstand the redress mechanism in § 706(1). First, Plaintiffs are not seeking to sanction the

Government and are only seeking to require the Government to produce and mail, in a timely manner, a document that USCIS has already approved them to receive.

Second, *Brock* does not prohibit this Court from requiring the Government to print EADs that have been unreasonably delayed. In *Brock*, a county challenged the Secretary of Labor's determination that it was required to return federal funding for job training because that decision was made after a 120 day period mentioned in the statute requiring the Secretary to determine the truth of an allegation that funds were misused within a certain time frame. *Id*. at 256. The Supreme Court did not apply APA § 706(1) and merely held that the Secretary of Labor does not lose the power to recover misused funds after expiration of the 120-day period specified in § 106(b) of 29 U.S.C § 816(b). *Id*. at 266. In fact, in the opinion, the Supreme Court explicitly noted that individuals affected by agency delay are entitled to bring an action in a district court compelling agency action and to enforce deadlines specified by a statute. *See id*. at 260 fn. 7 (noting that there are "less drastic remedies available for failure to meet a statutory deadline" including APA § 706(1) since "[c]learly the statutory command that the Secretary 'shall' act within 120 days does not commit such action to the Secretary's discretion. Moreover, nothing in CETA appears to bar an action to enforce the 120-day deadline."). *Brock* is therefore inapplicable since Plaintiffs are not seeking a declaration that USCIS lacks discretion or authority to act or investigate and are instead seeking a statutory remedy that the Supreme Court has explicitly sanctioned. The remaining cases that Defendants cite for the proposition that Plaintiffs cannot establish redressability are similarly inapposite since they do not apply or speak to the applicability of § 706(1) and since Plaintiffs do not seek to limit USCIS' discretion or jurisdiction over the adjudication of EAD applications.[1]

---

[1] *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 63-65 (1993) (stating courts cannot dismiss forfeiture actions filed within statute of limitations where a government officials fails to comply

### B. Irreparability of Harm

The first factor the Court must consider in determining whether to grant a TRO is the irreparability of harm that the Plaintiffs will face absent injunctive relief. Plaintiffs argue that absent an order requiring USCIS to print their EADs immediately, they will suffer irreparable harm in the form of loss of employment, lost wages, and an inability to support themselves and their dependents in obtaining food, shelter, and health insurance. (ECF No. 17 at 7-14).

Generally, harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Courts in the Sixth Circuit generally find that the loss of employment or income do not constitute irreparable harm since the lost income and wages are fully compensable by money damages. *See Overstreet v. Lexington-Fayette Urb. County Govt.*, 305 F.3d 566, 579 (6th Cir. 2002) (noting that "income wrongly withheld may be recovered through monetary damages in the form of back pay.").

Where, however, the lost income and wages are not recoverable because the entity causing this loss is a sovereign, courts consider that harm irreparable. *See Monster Energy Co. v. Baran*, EDCV19871JGBKKX, 2020 WL 1652548, at *3 (C.D. Cal. Mar. 26, 2020) (determining that plaintiff's lost wages due to denial of H1B status constituted irreparable harm where they were not recoverable against administrative agency, USCIS); *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) (noting that the "[i]mposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes

---

with a procedural timing requirement when Congress does not specify a consequence for noncompliance); *United States v. Montalvo-Murillo*, 495 U.S. 711, 717-18 (1990) (defendant was not entitled to release because of the Government's the failure to comply with the Bail Reform Act's prompt hearing provision); *Hendrickson v. FDIC*, 113 F.3d 98, 102 (7th Cir. 1997) (determining that FDIC was entitled to remove bank president and noting that agencies do not lose jurisdiction over a matter for failure to comply with statutory time limits unless the statute specifies a consequence for failure to abide by that time limit); *Dipeppe v. Quarantillo*, 337 F.3d 326, 333-34 (3d Cir. 2003) (delay in processing plaintiff's removal for committing an aggravated felony did not entitle her to relief from removal and permanent resident status).

irreparable injury."); *Clarke v. Off. of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 65 (D.D.C. 2004) (noting "courts have recognized that economic loss may constitute 'irreparable harm' where a plaintiff's alleged damages are unrecoverable"); *Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929) (determining that taxes paid pursuant to challenged tax law would constitute irreparable harm where plaintiff would be unable to recover what was paid if the statute were found to be invalid).

Here, the damages for lost wages would not be recoverable against USCIS as a federal agency since these agencies enjoy sovereign immunity. *See Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013) (noting that "[s]overeign immunity extends to agencies of the United States" and "federal officers [acting] in their official capacities" but the APA waiver of sovereign immunity "extends to all non-monetary claims against federal agencies and their officers sued in their official capacity"); *see also California Assn. of Priv. Postsecondary Schools v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018) (noting that "economic loss sustained due to a federal administrative action is typically 'uncompensable' in the sense that federal agencies enjoy sovereign immunity, and the waiver of sovereign immunity in the APA does not reach damages claims").

Furthermore, courts in the Sixth Circuit routinely find that the prospect of losing health insurance benefits constitutes irreparable injury. *See e.g., Bailey v. AK Steel Corp.*, 1:06CV468, 2006 WL 2727732, at *11 (S.D. Ohio Sept. 22, 2006) (finding that plaintiffs had demonstrated irreparable harm where they alleged that they would be required to pay more for health insurance premiums and would lose access to medical, prescription medication, dental, and vision benefits if they did not).

Accordingly, Plaintiffs have demonstrated that they face irreparable harm if USCIS does not provide them with their EADs immediately.

### C. Immediacy of Harm

In conjunction with the potential of irreparable harm absent injunctive relief, the Court must also consider the immediacy of the harm Plaintiffs face. Fed. R. Civ. P. 65 (b)(1)(A). During the hearing, named Plaintiff Ramos testified that they were living in a shelter and unable to accept employment due to the fact that they did not have an EAD. Other named and putative class members testified that they are unable to accept or obtain employment without their EADs and are consequently unable to provide for themselves and their immediate family members.

One such putative class member, Dr. Meng Huan Lee, testified that he had recently completed a periodontics program and had been offered employment as a periodontist, but is unable to begin work because he does not have an EAD. Dr. Lee received notice that his application for an EAD had been approved on June 12, 2020, but has yet to receive the card. Dr. Lee testified that his current health insurance is set to expire at the end of July and he is unable to obtain health insurance through his employer without a valid EAD. He further testified that the inability to work impacts his ability to provide health care for his family, including his wife who is pregnant and needs regular access to prenatal care. The threat of harm is immediate for Dr. Lee since his health insurance will expire before this Court can conduct a preliminary injunction hearing.

The inability to provide for oneself and one's family members constitutes an immediate threat of harm for many of the named and putative class Plaintiffs, since those individuals are left to rely on the mercy and kindness of others for basic necessities such as shelter and food. An additional risk of immediate harm is also posed to both Plaintiffs Ramos and Sanchez, who reside

at homeless shelters and cannot leave those shelters until they receive their EADs. Both of those Plaintiffs are concerned about the possibility of contracting the COVID-19 virus by remaining at the shelter. This too poses a risk of immediate harm.[2]

### D. Class wide Relief

Plaintiffs request that temporary injunctive relief be granted on a class wide basis even though no determination on class certification has taken place. (ECF No. 2 at 15-18). This does not, however, prevent Plaintiffs from obtaining interim relief on a class-wide basis since "there is nothing improper about a preliminary injunction preceding a ruling on class certification." *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012). A court is permitted to grant temporary injunctive relief to members of a putative class before class certification. *See Wright v. City of Cincinnati*, 450 F. Supp. 2d 831, 841 (S.D. Ohio 2006) (granting temporary injunctive relief to members of a putative class prior to decision on class certification since the motion for class certification was likely meritorious); *Mays v. Dart*, 20 C 2134, 2020 WL 1812381, at *3 (N.D. Ill. Apr. 9, 2020) ("a district court has general equity powers allowing it to grant temporary or preliminary injunctive relief to a conditional class."); *Wilson v. Williams*, 4:20-CV-00794, 2020 WL 1940882, at *6 (N.D. Ohio Apr. 22, 2020) (granting temporary injunctive relief to conditional class), *vacated,* 961 F.3d 829 (6th Cir. 2020).

Plaintiffs have filed an emergency motion requesting that this Court certify a class of individuals, but this Court will rule upon that request by separate entry. In the amended complaint Plaintiffs seek to represent a nationwide class of:

---

[2] The CDC recognizes that homeless individuals are at risk of infection when there is community spread of COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/unsheltered-homelessness.html, last accessed 7/27/2020.

>All aliens who reside in the United States and have submitted an Application for Employment Authorization that has been approved by USCIS, but who have not received an EAD.

(ECF No. 17 at 14). Accordingly, this Court will grant temporary injunctive relief to both named Plaintiffs and putative class members who meet the class definition outlined in Plaintiffs' complaint.

## IV.  CONCLUSION

For the reasons stated above, this Court **DENIES** Defendants' motion to dismiss (ECF No. 35). This Court **GRANTS** Plaintiffs' motion for a temporary restraining order. (ECF No. 2, No. 34).

As indicated during the hearing, this Court hereby waives the bond requirement. Plaintiffs are not required to post bond on this matter, given the financial hardship that named Plaintiffs and putative class plaintiffs face. *See, e.g.*, *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir. 1982) ("Finally, under Fed. R. Civ. Pro. 65(c) the amount of security given by an applicant for an injunction is a matter for the discretion of the trial court, which may in the exercise of that discretion even require no security at all.").

This Temporary Restraining Order will remain in effect until adjournment of the Preliminary Injunction hearing. The Preliminary Injunction hearing will be held on **August 10, 2020 at 9:30 a.m.** before the Honorable Algenon L. Marbley, via virtual courtroom. The Court will not continue the hearing date except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of exceptional circumstances.

Defendants' response to Plaintiffs' motion for injunctive relief is due by August 5, 2020. Plaintiffs' reply is due by August 7, 2020. The focus of the parties' briefing should address whether the requirements of class certification have been met and the four factors the Court will consider

in determining whether a Preliminary Injunction is warranted: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

The Court shall handle all discovery disputes for the purposes of the Preliminary Injunction briefing. The parties, or a party may move to consolidate the Preliminary Injunction hearing with trial on the merits. This motion should be brought prior to August 5, 2020, or it will be considered waived.

**IT IS SO ORDERED.**

                                                                        _____
                                                                        **ALGENON L. MARBLEY**
                                                                        **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  August 3, 2020**