IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RANJITHA SUBRAMANYA, individually and on behalf of a class of those similarly situated, et al., | Case No. 2:20-CV-3707 |
| Plaintiffs, | Chief Judge Algenon L. Marbley |
| vs. | Magistrate Judge Deavers |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., | **CONSENT ORDER** |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Ranjitha Subramanya, Lucrecia Rosa Ramos, Kebin Palma Sanchez and Rene Kejang Ngenkeng ("Plaintiffs") and Defendants United States Citizenship and Immigration Services (USCIS), Ken Cuccinelli and Ernest DeStefano ("Defendants") hereby agree to the entry of this Consent Order in full and final settlement of all claims asserted by Plaintiffs.

On August 18, 2020, Plaintiff Carlos Francisco Rodriguez Martinez, gave notice of his voluntary dismissal of all claims in this lawsuit, including his claims for attorneys' fees, costs and expenses. (Doc. #52).

Plaintiffs sought temporary, preliminary and permanent mandatory injunctive relief, declaratory relief, and a writ of mandamus to compel Defendants to Produce and Mail Employment Authorization Documents ("EADs") to Plaintiffs and Putative Class Members after approving their applications for employment authorization. Plaintiffs' complaint alleged that USCIS had

significantly slowed and/or stopped printing EADs, which are essential for Plaintiffs and approximately 75,000 Putative Class Members to obtain or keep their jobs. Plaintiffs sought emergency relief that required Defendants to print and issue the EADs immediately, and in no event later than seven days from the date of the Court's order.

Defendants deny all of Plaintiffs' allegations and state that this Consent Order is not, is in no way intended to be, and should not be construed as an admission of liability or fault on the part of the Defendants, the United States, or their agents, servants, or employees.

After this Court granted Plaintiffs' motion for temporary restraining order (TRO) (Doc. #42), the Parties engaged in extended settlement discussions with the assistance of Magistrate Judge Deavers. Based on those discussions, Plaintiffs have determined that it is in their interests and the interests of Putative Class Members to settle this Action quickly on the terms set forth below, and thereby address the immediate and irreparable harm that is alleged to exist. Defendants also consider it desirable to settle the claims alleged in this case and to end this Action on the terms set forth below to avoid the risk, expense, and burden of protracted litigation. All Parties have compromised certain claims, defenses and remedies to reach a negotiated resolution.

A. Plaintiffs and Putative Class Members

1. Plaintiffs who are parties to this Consent Order are Ranjitha Subramanya, Lucrecia Rosa Ramos, and Kebin Palma Sanchez, and Rene Kejang Ngenkeng.

2. The putative class has not been certified and Plaintiffs hereby withdraw their motion for class certification. Therefore, the Putative Class Members are not

2

parties to this Action or the Consent Order, although they may benefit from the relief described below.

3. Plaintiffs represent and agree that they are each of legal age and mentally competent to agree to this Consent Order. Plaintiffs further represent that they each fully understand their right to discuss this Consent Order with an attorney; that to the extent, if any, they so desired, they have availed themselves of this opportunity; that they fully understand all provisions of this Consent Order; and that they are voluntarily entering into this Consent Order with full understanding of its legal consequences and without any duress.

B. Defendants

4. Defendant United States Citizenship and Immigration Services is an agency of the United States Department of Homeland Security (hereinafter DHS/USCIS).

5. Defendant Ken Cuccinelli, in his official capacity, is the Senior Official Performing the Duties of the Director of the USCIS.

6. Defendant Ernest DeStefano, in his official capacity, is the Chief of the Office of Intake and Document Production, USCIS.

Consent of the Parties to this Consent Order

C. As indicated by the signatures appearing below, the Parties agree to the entry of this Consent Order.

## II. DEFINITIONS

3

Capitalized terms in this Consent Order shall be defined as follows:

**"Action"** means the civil action captioned Ranjitha Subramanya, et al. v. United States Citizenship and Immigration Services, et al., No. 2:20-cv-03707, United States District Court for the Southern District of Ohio.

**"Approved"** means that an authorized USCIS officer has reviewed and granted the Application for Employment Authorization, Form I-765, filed by a Plaintiff or Putative Class Member.

**"Benchmark(s)"** means the agreed-upon date for completion of certain events, articulated in Section IV.

**"Biometrics"** means fingerprints, photograph, and/or signature.

**"Biometrics Capture"** means the collection of Biometrics at a USCIS Application Support Center, or as otherwise designated by USCIS in accordance with USCIS standards.

**"Biometrics Requirements"** means the Biometrics Capture deemed necessary by USCIS to adjudicate and Produce EADs in accordance with USCIS standards.

**"Consent Order"** means the Parties' compromise of disputed claims approved by the presiding judge.

**"Court"** means the United States District Court for the Southern District of Ohio.

**"Defendants' Counsel"** means the United States District Attorney's Office for the Southern District of Ohio.

**"EAD"** means Employment Authorization Document.

4

**"Final Certification"** means Defendants' last Report stating that they have Produced and Mailed the Employment Authorization Documents of all Plaintiffs and Putative Class Members and are in full compliance with Sections III and IV of the Consent Order.

**"I-765"** means USCIS Form I-765, the Application for Employment Authorization.

**"Mail"** means staged in a designated location ready for U.S. Postal Service pick up.

**"Parties"** or **"Party"** means Plaintiffs and/or Defendants.

**"Plaintiffs"** means Ranjitha Subramanya, Lucrecia Rosa Ramos, and Kebin Palma Sanchez, and Rene Kejang Ngenkeng.

**"Plaintiffs' Counsel"** means those individuals designated as Plaintiffs' Counsel of record before this Court.

**"Produce"** or **"Production"** means to create a physical EAD in accordance with USCIS standards.

**"Putative Class List"** means the list, which USCIS will create on August 20, 2020 and update on September 9, 2020 and September 30, 2020, of the Plaintiffs and Putative Class Members. USCIS will maintain the Putative Class List and file aggregate data describing the number of Plaintiffs and Putative Class Members, if any, in the aggregate in each subclass. The Putative Class List shall contain the following data, which USCIS will update regularly: Receipt Number for the Form I-765, the date the I-765 was Approved, and the date that the EAD was Produced.

**"Putative Class Member(s)"** means an alien who resides in the United States, who has submitted a Form I-765 to USCIS, whose Form I-765 USCIS approved on or after December 1, 2019, and

whose Employment Authorization Document has not been Produced at the time the Putative Class List was generated. This definition encompasses two subclasses:

1. Aliens whose EADs are queued for Production at a USCIS card production facility at the time the Putative Class List was generated ("Subclass 1").
2. Aliens whose EADs have not been queued for Production at a USCIS card production facility at the time the Putative Class List was generated ("Subclass 2").

**"Settled Claims"** means all claims for relief that were brought or could have been brought on behalf of the Plaintiffs based on the facts and circumstances alleged in the Complaint and First Amended Class Action Complaint (Doc. # 1, 17).

**"Receipt Number"** means the unique number assigned by USCIS to the Form I-765 filed by each Plaintiff or Putative Class Member that serves as their basis for class membership in this matter and by which USCIS tracks the adjudication of the application.

**"Report"** means a document filed by Defendants as described in Section V.

It is hereby ORDERED, ADJUDGED, and DECREED:

## III. INTERIM RELIEF

9. Promptly upon execution of this Consent Order by Defendants' Counsel and Plaintiffs' Counsel, Defendants agree to post a notice on USCIS' website to substantially include the following language.

**EAD Production Delays Due to COVID**

Due to the extraordinary and unprecedented COVID-19 public health emergency, the production of certain Employment Authorization Documents (Form I-766, EAD) is

6

delayed. As a result, Form I-797, Notice of Action, with a Notice dated from December 1, 2019 through and including August 20, 2020, informing an applicant of approval of an Application for Employment Authorization (Form I-765), shall be permitted to serve as a Form I-9, Employment Eligibility Verification, List C document that establishes employment authorization issued by the Department of Homeland Security pursuant to 8 C.F.R. 274a.2(b)(1)(v)(C)(7), notwithstanding language on the Notice stating it is not evidence of employment authorization. Employees may present their Form I-797 Notice of Action showing approval of their I-765 application to their employers as a list C document for purposes of compliance with Form I-9 until October 15, 2020.

THE I-797 NOTICE OF ACTION DESCRIBED ABOVE DOES NOT PROVE EVIDENCE OF IDENTITY OR SERVE AS A LIST A DOCUMENT ESTABLISHING BOTH IDENTITY AND EMPLOYMENT AUTHORIZATION OR A LIST B DOCUMENT ESTABLISHING IDENTITY FOR FORM I-9 PURPOSES.

Employees who present this Form I-797 Notice of Action for new employment must also present their employer with an acceptable List B document that establishes identity to meet Form I-9 requirements. The Lists of Acceptable Documents is on Form I-9.

Employees who are already employed can present the Form I-797 Notice of Action described above to their current employers to meet the Form I-9 reverification requirement.

Not later than October 15, 2020, employers must reverify the employment eligibility on Form I-9 of any employee who presented this Form I-797 Notice of Action as a List C document pursuant to this guidance. To meet the Form I-9 reverification requirement, such employees will need to present their employers with new evidence of employment authorization from either List A or List C of the Lists of Acceptable Documents.

## IV. AGREED UPON TIMELINE

10. Subject to Section VI. 16. and 18., Defendants agree to comply with the following Benchmarks:

   a. By August 21, 2020, Defendants will provide Plaintiffs' Counsel and will file the aggregate data for the Putative Class Members. This data will include the aggregate number of Putative Class Members who are seeking an EAD based on a (c)(8) classification in Subclass 2. Defendants will provide Plaintiffs' Counsel and will file updated aggregate data on September 9, 2020 and September 30, 2020.

7

    b. Defendants will Produce and Mail EADs to Subclass 1 members not later than 7 business days after execution of this Consent Order by Defendants' Counsel and Plaintiffs' Counsel.

    c. Defendants will Produce and Mail EADs to Subclass 2 members not later than 7 business days of Biometrics Capture.

        i. As of August 18, 2020, USCIS represents that for already identified Putative Class Members who USCIS determines need an Application Support Center appointment, it has scheduled appointments at Application Support Centers on or before September 4, 2020, except for 18 individuals. Those 18 individuals reside in areas where USCIS operates Application Support Centers on a part-time basis. Of those 18 individuals, USCIS represents that 17 of those individuals have been scheduled for an appointment at an Application Support Center the week of September 15, 2020; and one person has been scheduled the week of September 22, 2020. Once the Putative Class List is created on August 20, 2020, USCIS will immediately schedule appointments at Application Support Centers for all Putative Class Members, if any, who are not already scheduled for an appointment.

        ii. USCIS represents that it will expedite Production and Mailing of EADs for Subclass 2 once the Biometrics Capture is complete.

        iii. If a Putative Class Member fails to appear at the first scheduled appointment at an Application Support Center, USCIS will schedule an additional appointment. If the Putative Class Member fails to appear at the second

scheduled appointment, such individual will no longer be considered a Putative Class Member, and all other obligations under this Consent Order shall be considered fulfilled for such Putative Class Member.

11. The above Benchmarks in this Consent Order will be tolled in circumstances including those outlined below, because such events may take the case beyond the agreed time frame for production, per this Consent Order. Specifically:

   a. For any EAD produced pursuant to this Consent Order that does not meet the quality assurance standards of USCIS during the period it takes to identify and correct the defect for that EAD.

   b. The closure of any relevant USCIS offices due to health concerns, such as COVID-19.

   c. Any other event beyond the control of USCIS, including, but not limited to, failure or malfunction of software or hardware, that affects its ability to Produce or Mail multiple EADs.

   d. If the circumstances in (b) or (c) become evident to Defendants, Defendants' Counsel will promptly notify Plaintiffs' Counsel of such circumstances and the Parties will negotiate an extension of Interim Relief set forth in Section III.

12. If an administrative furlough is implemented by USCIS, and such furlough affects the obligations identified in this Consent Order, USCIS will promptly notify Plaintiffs' Counsel and negotiate in good faith to extend the Interim Relief addressed in Section III as necessary. Plaintiffs reserve the right to petition the

Court for immediate relief, including a request to vacate the Consent Order and resume litigation, at any time before the Final Certification is filed if an administrative furlough implemented by USCIS affects its ability to meet the obligations identified in this Consent Order.

## V. REPORTING

13. Defendants agree to report their compliance with the obligations under this Consent Order on September 9, 2020 and September 30, 2020 by creating and updating the aggregate data as provided in Section IV.10.a.

14. Subject to Section IV.10.c.iii, in the event that Defendants have not complied with their obligations outlined in this Consent Order, Defendants will file a Report on October 9, 2020 and every 7 days thereafter until Defendants have Produced and Mailed EADs for all the individuals on the Putative Class List.

15. Subject to Section IV.10.c.iii, when Defendants have Produced and Mailed EADs for all Putative Class Members, they shall file the Final Certification so alerting Plaintiffs and this Court.

## VI. IMPLEMENTATION AND ENFORCEMENT

16. The Court will retain exclusive jurisdiction to enforce the terms of the Consent Order. The Court's jurisdiction and the terms of the Consent Order shall terminate automatically upon the Court's order approving Defendants' Final Certification.

17. All Parties will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.

18. Should Plaintiff's Counsel believe in good faith that Defendants are out of compliance with the requirements of this Consent Order, Plaintiffs' Counsel shall promptly notify Defendants' Counsel, in writing, of the specific grounds upon which noncompliance is alleged. Within five (5) business days after receipt of the notice from Plaintiffs' Counsel, Defendants' Counsel shall notify Plaintiffs' Counsel of Defendants' position and any action it has taken or intends to take in connection therewith. The Parties shall negotiate in good faith in an effort to resolve any remaining disputes. The Parties agree that this negotiation period will be considered exhausted and either Party may seek relief from the Court if either Party determines that negotiations have reached an impasse. Nothing in this paragraph should be construed to require Plaintiffs' Counsel to await a response from Defendants as otherwise required by this paragraph if the alleged failure to comply with the Consent Order is the result of an administrative furlough as described in Section IV.12.

## VII. TERMINATION OF OBLIGATIONS

19. The obligations under this Consent Order shall automatically terminate at the same time as the Court's jurisdiction, which shall terminate upon the Court's order approving Defendants' Final Certification. At that time, this Consent Order shall dissolve without further action and Plaintiffs' claims will be dismissed with prejudice.

## VIII. RELEASE OF CLAIMS

20. Upon the dissolution of this Consent Order as found at "Termination of Obligations," Section VII. 19., the Parties hereby mutually release and forever discharge one another and their past and present respective officers, agents, and employees, from any and all claims, demands, suits, rights, damages, administrative remedies, and causes of action of any kind, nature, and character, known and unknown, arising from or related to the circumstances described in the temporary, preliminary and permanent mandatory injunctive relief, declaratory relief, and a writ of mandamus as of the date of the entry of this Consent Order. And the Plaintiffs shall forever be barred and enjoined from bringing or prosecuting any Settled Claim against any of the Defendants, and all of their past and present agencies, officials, employees, agents, attorneys, and successors. Nothing in this paragraph, however, shall be construed to preclude any Plaintiff, who dismissed their claim from filing subsequent litigation, against any Defendant for any reason other than based on the specific allegations in the temporary, preliminary and permanent mandatory injunctive relief, declaratory relief, and a writ of mandamus.

21. The Parties agree that should any provision of this Consent Order be declared or determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, the remainder of the Consent Order shall nonetheless remain binding and in effect.

## IX. ATTORNEYS' FEES, COSTS AND EXPENSES

22. The Parties have resolved the matter of Plaintiffs' Counsel's claim for fees plus costs and expenses, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) and 5 U.S.C. § 504 et seq., as follows: Within sixty (60) days of receiving the information in Section IX.23 below, Defendants will deliver to Plaintiffs' Counsel the sum of $90,000, in settlement of all claims for attorneys' fees and costs that were or could have been or will be claimed in this litigation. ("Attorneys' Fee Settlement Amount"). Defendants' payment of the sum identified above shall satisfy any claims by Plaintiffs and Plaintiffs' Counsel for attorneys' fees and costs related to and for the Action. However, nothing in this paragraph shall be construed to preclude Plaintiffs' Counsel from seeking fees, costs, and expenses, as appropriate, incurred in seeking judicial enforcement of this Consent Order, in seeking to vacate the Consent Order, and/or in litigating this matter after the Consent Order is vacated.

23. Subject to the foregoing provisions, Defendants shall deliver the Attorneys' Fee Settlement Amount to Plaintiffs' Counsel by direct wire transfer into Plaintiffs' Counsel's designated account. Plaintiffs' Counsel shall provide to Defendants within five days of the entry of the Consent Order all information necessary to accomplish the direct wire transfer into that account. Plaintiffs and Plaintiffs' Counsel acknowledge that payment of the Attorneys' Fee Settlement Amount by Defendants or any of them in accordance with the wire instructions shall resolve all of Defendants' liability for such amount.

24. Plaintiffs' Counsel shall be fully responsible for the allocation and payment of the Attorneys' Fee Settlement Amount among themselves.

## X. NO ADMISSION OF WRONGDOING

25. The Consent Order, whether or not executed, and any proceedings taken pursuant to it:

   a. Shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against Plaintiffs and Putative Class Members, consistent with the Constitution and laws of the United States, and applicable regulations;

   b. Shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants of the truth of any fact alleged by the Plaintiffs or the validity of any claim that was asserted in the Action or in any litigation or the deficiency of any defense that has been or could have been asserted in the Action or of any liability, negligence, fault, or wrongdoing of the Defendants, or any admission by the Defendants of any violation of or failure to comply with the Constitution or laws of the United States, or any regulations; and

   c. Shall not be offered or received against the Defendants as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, in any other civil, criminal or administrative action or proceeding,

14

other than such proceedings as may be necessary to effectuate the provisions of this Consent Order; provided, however, that if this Consent Order is approved by the Court, Defendants may refer to it and rely upon it to effectuate the liability protection granted them hereunder.

## XI. MISCELLANEOUS

26. This Consent Order constitutes the full and complete agreement among the Parties and fully supersedes any and all prior agreements or understandings among the Parties pertaining to the subject matter of this Action. There are no oral side agreements or understandings. No other promises or agreements shall be binding unless signed by the Parties.

27. This Consent Order shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the Parties hereto.

28. The Parties agree that the terms of this Consent Order are based only on specific circumstances related to this matter alone; no precedent is established by this Consent Order.

29. The Parties agree that this Consent Order may be made public, and all Parties expressly consent to such release and disclosure.

30. It is contemplated that approval of this Consent Order may be executed in several counterparts, with a separate signature page for each Party's counsel. All such counterparts and signature pages, together, shall be deemed to be one document.

31. The Parties agree that the dates described herein refer to calendar days, unless otherwise stated. If the date for performance of any act required by or under this Consent Order falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Consent Order.

32. The Parties agree to accept an electronic signature or a handwritten signature transmitted electronically by any Party to this Consent Order. Such a signature shall have the same legal effect and shall be equally enforceable in law and/or equity as the handwritten original signature.

_____
Chief United States District Judge

Agreed to by:

DAVID M. DEVILLERS
United States Attorney

s/Christopher R. Yates
CHRISTOPHER R. YATES (0064776)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
E-mail: christopher.yates@usdoj.gov

*Attorney for Defendants*

s/Caroline H. Gentry
CAROLINE H. GENTRY (0066136)
Porter Wright Morris & Arthur LLP
One South Main Street, Suite 1600
Dayton, Ohio 45402
E-mail: cgentry@porterwright.com

and

Robert H. Cohen (0009216)
David P. Shouvlin (0066154)
Kirsten R. Fraser (0093951)
Porter Wright Morris & Arthur LLP

16

        41 South High Street, Suites 2800-3200
        Columbus, Ohio 43215
        E-mail: rcohen@porterwright.com
        E-mail: dshouvlin@porterwright.com
        E-mail: kfraser@porterwright.com

        **and**

        Ana P. Crawford (0090581)
        Porter Wright Morris & Arthur LLP
        250 East Fifth Street, Suite 2200
        Cincinnati, Ohio 45202
        Email: acrawford@porterwright.com

        *Attorneys for Plaintiffs*